## No. IX.

### R. H. BRADLEY v. JOHN McCRABB.

#### (See Note 47.)

*Appeal from Victoria County.*

HEMPHILL, CHIEF JUSTICE.—John McCrabb, the plaintiff in the court below, presented his petition to the District Court for the County of Victoria at its spring term, 1841, stating that in the month of January, in the year 1838, he was duly elected to the office of clerk of the

**Note 34.**—Hamilton v. McKensie, p. 461.

Appellate court is without jurisdiction when the appeal is not taken in time. In such cases the appeal will be dismissed. Lockhart v. Lockhart, 1 T., 199; Hicks v. Harlan, 1 T., 560; State v. Croner, 2 T., 492; Keece v. Swift, 3 T., 111; Urbane v. Johnson, 3 T., 191; Reynolds v. Dechaumes, 22

district court for the said county; that he was duly qualified; exercised the duties and enjoyed the immunities of the said office until the 1st of February last; when Robert H. Bradley, the appellant in this court, by virtue of a pretended election claimed to be the lawful incumbent of said office, and that in accordance with the advice of the chief justice of said county, and the desire of his honor the district judge, and in order to the due administration of justice, and that the courts might be held without interruption, he had handed over the books, papers and records of said court and said office to the said Bradley, but denied that he had by that act transferred the rights, the perquisites, immunities, and right to said office; but retained and reserved the same to himself, until the full end and term of four years should elapse from the period of his election. He prayed for a writ of mandamus requiring the said Bradley to deliver to the said petitioner the said office with all its immunities, records, books, papers, etc., or show cause to the contrary. The petition was sworn to on the 21st of April, and on the same day there was entered of record in the said court an order commanding the said Bradley to deliver up to the said McCrabb the said office, with the immunities, books, papers, records, etc., within one day, or otherwise to show, if he could, any sufficient cause or warrant to the contrary. On the following day the respondent returned, or showed for cause why he ought not to be required to deliver up to the said plaintiff the said office, with the books, records, immunities, etc., and why a peremptory mandamus should not issue:

1. That the said plaintiff had other remedies at law.

2. The respondent had not good, sufficient, legal and timely notice of the suit of the said McCrabb.

3. That the said McCrabb was only elected (if he ever was legally elected, which defendant denied) to fill an unexpired term terminating on the 1st day of February, 1841.

4. That at an election held in conformity with law on the 1st day of February, 1841, to fill the said office for the said county the said respondent received the largest number of votes for the said office; that he had been duly commissioned as clerk of the said court by the President of the Republic; and that by virtue of the authority thus vested in him he has taken possession of the records, books and papers of the said office, and has continued ever since in discharge of the duties of the same; and prays for a rescission of the order entered of record as aforesaid.

The right of trial by jury was waived, and the cause being submitted to the court, a peremptory mandamus was ordered to be awarded, commanding respondent to yield up to the plaintiff the office and franchise

---

T., 116; Hall v. Claiborne, 27 T., 217; House v. Bennett, 40 T., 346; Wilson v. Adams, 50 T., 5; Warren v. Wooters, 52 T., 568; Mills v. Paul, 1 T. C. A., 419.

**Note 35.**—Republic of Texas v. Young, p. 464.

A colonist was not entitled to a grant as head of a family, unless his family was resident in Texas. Land Commissioner v. Ball, Dal., 366; Land Commissioner v. Reily, Dal., 381; Land Commissioner v. Walling, Dal., 524;

of clerk of the said court with all the immunities, books, papers, archives of said office, to be used, held and kept by the said McCrabb until the full end and expiration of his office, viz., for four years from and after the 10th day of January, 1838.

From this decision the respondent has appealed. As no argument has been made in this cause, nor brief offered by counsel, we will proceed to consider the objections to the judgment of the court below in the order of their arrangement in the return of the respondent.

And first that the plaintiff was not entitled to this writ, he having other remedies at law. As this application was subsequent to the passage of the statute of this Republic requiring judges, in issuing writs of mandamus, to observe the rules which govern such writs at common law as modified by the statutes of this Republic, we will proceed to consider whether at common law mandamus would be the appropriate remedy of the wrong complained of in this controversy. The writ of mandamus, according to the theory of the British Constitution and of the common law, is deemed a prerogative writ of an extensively remedial nature, and has been figuratively styled "one of the principal flowers of the jurisdiction of the king's bench," in which the king once sat in person, and is by legal fiction still presumed to be present. See 1 Chitty's General Practice, p. 79; Kendall v. United States, 12 Pet., 620.

Among an infinite number of other purposes to which this writ may be applied, it lies to compel the restoration or admission of anyone entitled to any office or franchise of a public nature, whether the same be spiritual or temporal, and also for the production, inspection and delivery of public books and papers. See Black. Com., p. 110; Bac. Ab. Mand.; 2 Tomlin's L. Dic., p. 512. In 3 H. and M., 1, 47, it was decided to be a proper remedy to restore to his office a clerk of a court who has been ousted therefrom by the illegal appointment of another person. See 2 Tucker's Com., p. 202. It will not only issue in cases where the party having a specific legal right has no other legal operative remedy, but where the other modes of redress are inadequate or tedious, the writ will be awarded. 3 Black. Com., p. 110; 1 S. C. (Tread. Ed.), p. 175; 4 Burr, 2044; 3 Burr, 1266. One of the reasons for the abundant caution in the exercise of this jurisdiction under the common law, and the restriction of its application to cases where there was no other legal, specific and operative remedy, was the final character of the judgment awarding the writ of mandamus; as no writ of error lay by which

Republic v. Skidmore, Dal., 581; Langford v. Republic, Dal., 588; Republic v. Inglish, Dal., 608; Johns v. Republic, Dal., 621; Grooms v. State, 1 T., 568; Republic v. Skidmore, 2 T., 261; Tichnor v. State, 2 T., 269; Lewis v. Ames, 44 T., 319, 345; Lott v. King, 79 T., 292; Hill v. Moore, 85 T., 335; Byrn v. Kleas, 15 T. C. A., 205; Union Beef Co. v. Thurman, 70 Fed. Rep., 965. An unmarried colonist under twenty-one years of age, was not entitled to a headright grant. Lockhart v. Republic, 2 T., 127. But it will be presumed from the fact that a headright certificate was granted by the proper authority, that the grantee was the head of a family, and evidence is not admissible in a collateral proceeding to show that he was not married and that his family was not in Texas. Johnston v. Smith, 21 T., 722; Bowmer v. Hicks, 22 T., 155; Howard v. Colquhoun, 28 T., 134; Burkett v. Scarborough, 59 T., 495; Capp v. Terry, 75 T., 391; Boone v. Hulsey, 71 T., 176; Hill v. Moore, 85 T.,

it could be subjected to the revision of a superior tribunal. But under our Constitution and laws the defeated party is entitled to an appeal from any final judgment rendered in the district courts; and the jealous caution which might arise from the influence of apprehensions that remediless wrongs might be committed, can have no foundation or support in the structure of our judicial system. It is true that at common law the writ of quo warranto will lie in the name of the king or the Republic against any person or corporation, as well for the usurpation as for the nonuser or abuse of any franchise or liberty, to show by what warrant or title they claim such right or franchise. And had an information in the nature of a quo warranto been filed in this cause, we will not say that the same could not have been sustained; but where the object is not only to restore to office him who has been illegally ousted, but also to cause the books, papers and archives thereof to be delivered to his possession, we are of opinion that the writ of mandamus operates a more complete and effectual remedy.

The next objection, that the respondent did not receive sufficient legal and timely notice, will be found untenable. Were the seventh section of the act establishing district courts alone consulted, we might hastily conclude that all process issued in the course of judicial proceedings must be served at least five days before the next term succeeding the issuing of said process. But when construed with other portions of the same statute, such a conclusion will be found incompatible therewith, and the provisions of the said section must necessarily be restricted to the ordinary process obtained from the ministerial officer of the court, without the intervention of judicial power. Any other construction would in a great measure paralyze judicial authority and render it too imbecile for the effectual administration of justice or the redress of wrongs. By the fourth section of said act, Congress in conformity with the provisions of the Constitution has communicated to the district courts the most high and transcendent authority in both civil and criminal matters, limited and confined only by appeal to this tribunal. The judges are in express terms empowered either in vacation or term time to grant writs of habeas corpus, mandamus, injunctions, supersedeas and all other remedial writs known to the law, not repugnant to the Constitution, returnable according to law into the Supreme Court, or either of the said district courts, as the case may be. Under other circumstances it might be profitable to inquire whether the legislators by the use of the terms injunction, mandamus, supersedeas, etc., introduced or intended to introduce all the principles and rules by which these writs are governed at common law. In Aques v. Indice, 3 Martin,

---

335; Byers v. Wallace, 87 T., 503. Grant is valid if the grantee in good faith intended to move his family to Texas. State v. Skidmore, 5 T., 459; Russell v. Randolph, 11 T., 460. Acts of December 14, 1837, and February 4, 1841, required applicant to prove that he did not refuse to participate in the war and that he did not assist the enemy; and if applicant's intention of remaining while in the Republic, and certainty of returning on departure, were equivocal, he was not entitled to establish claims for donations of land. Republic v. Skidmore, Dal., 581; State v. De Casinova, 1 T., 401; Thomerson

171, it was decided that the use of common law names in judicial pro-
ceedings were naturally adopted in a practice carried on in the English
language, but that they should rather be considered the translation of
names formerly used, than as emanations from English jurisprudence.
That the words mandamus, procedendo, certiorari, prohibition, etc.,
sometimes employed in practice, may be considered good equivalents
for incitation, evocation, inhibition; but that their adoption as words
could by no rule of law or common sense be considered as having in-
troduced the English practice itself. But however interesting might
be the examination of this subject when a proper case is presented, the
present controversy could not be affected by the practice in relation to
remedies of a similar nature in courts deriving their jurisdiction from
the civil law. By subsequent legislation, the judges were required in
the issuance of the writs of mandamus to be directed by the rules which
govern such writs under the common law, as modified by the statutes
of this Republic. To the common law and to our statutes, then, must
we apply for the decision of the question, whether the order or alterna-
tive writ of the mandamus issued in this case should have been served
five days before the commencement of the term of the court, or whether
the same was properly issued in term time and returned at the same
term. In deciding on the proper practice to be pursued under our laws
and the organization of our courts, we derive but little assistance from
an examination of the practice of the common law courts in England;
nor has that practice by the introduction of the common law become of
force in this country, and the decisions thereon are no further binding
here than as they are applicable to the structure of our courts of jus-
tice. There the terms of the courts are frequent and long continued;
and the difference between the time of the test and the return of the
writ varies according to the distance of the respondent from the place
where the sessions of the courts are held. Here our courts are held but
twice in the year. The term of many of them does not exceed six days,
which is two days less than the minimum period allowed in England
between the teste and return of the writ of mandamus. The dissim-
ilarity between the organization of the English and our courts is so
great that no deduction can be shown from the English practice as to
the proper period of notice under our judicial establishment. The ques-
tion then arises, whether on a just interpretation of our statute laws
(considering the powers of the district courts and the objects to be
obtained by the application of the remedy), a writ of mandamus can
be returned to the same term from which it issued? This question

v. State, 8 T., 172; Russell v. Randolph, 11 T., 460; Patton v. Evans, 15 T.,
363.

**Note 36.**—Thompson, Morton and Payne v. Harrison, p. 466.

    Gaming and wagering contracts are invalid only when prohibited by
statute or induce immorality. Dunman v. Strothers, 1 T., 89; Smith v. Brown,
3 T., 360; McElroy v. Carmichael, 6 T., 454; Kirkland v. Randon, 8 T., 10;
Crump v. Secrest, 9 T., 260; Pierce v. Randolph, 12 T., 290; Norvell v. Oury,
13 T., 31; Campbell v. Reeves, 14 T., 8; Boggess v. Lilly, 18 T., 290; Connor v.
Mackey, 20 T., 747; Wheeler v. Friend, 22 T., 683; Monroe v. Smelly, 25 T., 586;

will admit of but one answer. If we examine the usages of other courts where common law prevails, we will find that the rule to show cause, the alternative and peremptory mandamus have all been granted at the same term of the court. The same provision which authorizes judges to issue writs of mandamus gives authority also to issue writs of habeas corpus, requiring them both alike to be returned to the district court. It surely would not be contended that a writ of habeas corpus issued at one term of the court could not be returned until the succeeding term thereof. Such a construction would render nugatory this great instrument of human liberty, and a similar one would vitally impair the remedial efficacy of the writ of mandamus. It is the daily practice of courts to issue writs returnable to the same term, and the exercise of such power is essential to the due, prompt and vigorous administration of justice. Writs are issued for the apprehension of criminals, attachments for contumacious witnesses, and many other processes, returnable immediately, or at a day fixed in the said term. If the writ of conditional mandamus could not be returned at the same term at which it was issued, one of the objects of the adoption of that remedy, viz., the speedy attainment of justice, would be defeated; for no other mode of redress could be more tedious or protracted. The processes in mandamus are of an extraordinary nature and require the intervention of a judge, and as to the period of their return can not well be assimilated to the ordinary writs obtained from the ministerial officers of the courts; but in the absence of distinct statutory provisions, the day of return ought to be regulated by the objects to be accomplished and the usages of courts similarly situated. Nor can the exception be sustained because there was no rule to show cause and no conditional mandamus in fact issued. The circumstances of this case as developed by the evidence were peculiar.

The claimant, McCrabb, had delivered the papers and books of the office to the respondent at the request of the presiding judge, that there might be no failure in the administration of justice; it being understood that at the earliest opportunity, on proper proceedings being instituted, the right would be decided.

The respondent acted as clerk of the court, and recorded the order directing him to yield up the office, with its papers and books, etc., or show cause on the next day to the contrary. His answer shows notice of the existence of the order. Where the probable cause is manifest the court is authorized as the primary measure to issue the alternative mandamus; and as the making out of the writ in form by the respondent

Knight v. Gregg, 26 T., 506; Armstrong v. Parchman, 42 T., 185; Walker v. Armstrong, 54 T., 609; Seeligson v. Lewis, 65 T., 215; Floyd v. Patterson, 72 T., 202; Oliphant v. Markham, 79 T., 543; Beer v. Landman, 88 T., 450; Lewy v. Crawford, 5 T. C. A.. 293; Tuckett v. Herdic, 5 T. C. A., 690; Lovejoy v. Kaufman, 16 T. C. A., 377; Henson v. Flannigan, 1 App. C., sec. 566; Fowler v. Chapman, 1 App. C., sec. 963; Donnelly v. Bank, 3 App. C., sec. 169; Stewart v. Miller, 3 App. C., sec. 292; Marx v. Elsworth, 2 U. C., 83.

Note 37.—Horton v. Jones, p. 466.

On dissolution of injunction, plaintiff is entitled to have petition continued over for final trial on merits. Hall v. Phelps, Dal., 435; Hanchett v.

and having it served on himself would have been idle and troublesome
ceremony without any conceivable advantage, we can not think that on
these grounds the exception for want of notice is supported. The order
of procedure in suing out writs of mandamus is very clearly prescribed
in 3 Black. Com., p. 111, and ordinarily it should be pursued; but the
circumstances of this case and the official situation of the respondent
rendered other steps than the order of the court and his notification
thereof unimportant and superfluous. It has been decided that where
a mandamus is sought to restore to office a clerk who has been ousted
therefrom, that the person occupying the office ought to be made a party
to the conditional rule or mandamus, and it ought to be served upon
him that he may be warned to appear and defend his right. But if it
appear from the record that he was apprised of the proceedings it will
be sufficient. 3 H. and M., 1, 47; 2 Tuck. Com., p. 202. The defend-
ant was warned of the proceeding, and can not properly allege want
of notice. The next and most important question is, whether the said
claimant McCrabb was entitled to hold his office for the full end and
term of four years from and after the period of his election. The de-
populated counties, from causes over which they had no control, were
not organized nor county officers elected on the first Monday in Feb-
ruary, 1837, as was prescribed by law; and they were specially em-
powered by a supplemental act passed June 12, 1837, to hold elections
for county officers at such time as they might deem proper. Under
the provisions of this supplemental act, an election was held on the 10th
of January, 1838, in Victoria County, but the evidence whether the
writs and notices of election purported that the same was to be had
for a full term of office or an unexpired portion thereof was conflicting
and variant. It will not be material to weigh and endeavor to recon-
cile the variant testimony on this point, as the important principles
which are decisive of this controversy can not be affected or modified,
even if it were incontrovertibly established that the election was had
for an unexpired portion of the term of the office in dispute; nor can
the act of the claimant in voting or being a candidate for a re-election
in February, 1841, affect his rights—for if he were entitled under the
laws of the land to hold his office for four years, the election to fill an
office which was not vacant was a nullity, and without force and effect.
Section 6, article 4, of the Constitution provides "that the clerks of the
district courts shall be elected by the qualified voters for members of
Congress in the counties where the courts are established, and *shall hold
their offices for four years,* subject to be removed by presentment of a
grand jury and conviction of a petit jury." The terms of this pro-

Gray, 7 T., 549; Fulgham v. Chevallier, 10 T., 519; Lander v. State, 12 T., 462;
Hurnley v. Cook, 13 T., 586; Eccles v. Daniels, 16 T., 136; Sims v. Redding,
20 T., 386; Dangerfield v. Paschal, 20 T., 536; Edrington v. Allsbrooks, 21 T.,
186; Dearborn v. Phillips, 21 T., 449; Floyd v. Turner, 23 T., 292; Baldridge
v. Cook, 27 T., 555; Grant v. Chambers, 34 T., 573; Aiken v. Carroll, 37 T., 73;
Hewett v. Thomas, 37 T., 520; Pullen v. Baker, 41 T., 419; Kelley v. Whitmore,
41 T., 647; McKay v. State, 44 T., 43; Gaskins v. Peebles, 44 T., 390; Bridges
v. Cundiff, 45 T., 437; Watt v. White, 46 T., 338; Snow v. Nash, 50 T., 216;
Texas Land Co. v. Turman, 53 T., 619; Hale v. McComas, 59 T., 484; Washing-

vision are so plain that by no admitted rules of interpretation could the tenure by which this office is held be abridged or curtailed to a shorter period than four years. There is no analogy between term of the office of the district clerk and the fixed and definite periods for the commencement and termination of senatorial offices. The senators are ordered to be classified; the seats of the first class to be vacated at the end of the first year, the second at the end of the second year, etc., in such manner that one-third shall be chosen each year. Should a vacancy occur in the seat of any one member of a class, provision is made for filling the same, but the terms of office of the entire class continue until, and can only expire at stated periods. The time at which the senatorial term commences is fixed, and whether there be one or twenty incumbents it is also fixed, that it must expire at the end of three years. But can it be inferred by any legitimate rules of deduction that the tenure by which a clerk of the district court holds his office has any dependence on or connection with the period at which a former incumbent may have been elected to the said office, or the length of time for which he may have held the same? There is nothing in the terms of the Constitution which can militate against the plain and just conclusion that the person appointed by the elective power to the office of district clerk is entitled, whensoever he may be elected, to hold the same for four years. It can not therefore be material in point of fact to ascertain whether McCrabb was elected for a less or even a greater period than the term of four years. The Constitution prescribes the tenure of his office, and under its high guarantees he could not be disturbed even by a solemn act of legislative authority, without subverting the fundamental principles of our social compact; and if his constitutional rights could not be impaired by legislative action, they surely could not be subverted by mistakes of ministerial officers ordering the election, or the misapprehension of electors as to the period of duration of the office. This is an office created and its tenure and mode of appointment prescribed by the Constitution; and when the clerk is once elected, he is in office under that instrument, and entitled to all the rights and immunities conferred thereby. State v. Syles, 1 McCord, p. 238; State v. Hutson, Id., 240.

The question whether the legislative authority can constitutionally authorize the election of a clerk for a less period than a term of four years, does not perhaps properly arise from the construction of section 47 of the act establishing the district court. That authorizes an appointment by the district judge, when the office is vacant of a clerk pro

ton County v. Schulz, 63 T., 32; Love v. Powell, 67 T., 15; Daugherty v. Gibbs, 2 U. C., 255; Wagner v. Edmiston, 1 App. C., sec. 678.

Note 38.—Sloo & Byrne v. Powell and Others, p. 467.

[1] Is a harsh and summary remedy and all precedent conditions must be strictly complied with. Raquet v. Nixen, Dal., 386; Fowler v. Poor, Dal., 401; Gregg v. York, Dal., 528; Sydnor v. Chambers, Dal., 601; Wooters v. McGee, 1 T., 17; Chevallier v. Williams, 2 T., 239; Caldwell v. Haley, 3 T., 317; Sydnor v. Tetman, 6 T., 189; Marshall v. Alley, 25 T., 342; Culbertson v. Cabeen, 29 T., 247; Sheffield v. Gay, 32 T., 225; Moody v. Levy, 58 T., 532; Evans v. Tucker, 59 T., 249; Stiff v. Fisher, 2 T. C. A., 346; Sarrazin v. Het-

tem., until a regular election shall be held. But there is nothing in that section to justify the conclusion that the Legislature intended that a clerk, when elected, shall hold his office for a less term than the constitutional tenure. We express no opinion as to the proper power from which the district clerk should receive his appointment or authority, as that question was not presented in this controversy. Should any embarrassment arise from the present legislation on this subject, it will be in the power of Congress at any time to afford the remedy. We are of opinion that the judgment below should be affirmed, and it is hereby ordered, adjudged and decreed accordingly.

*Affirmed.*

## No. X.

### RICHARD ROMAN v. JAMES A. MOODY.

#### (See Note 48.)

*Appeal from Victoria.*

HEMPHILL, CHIEF JUSTICE.—The relator, James A. Moody, in his petition states that he was duly elected clerk of the County Court of Victoria County, in the month of January, 1838, and held the said office until the 1st of February, 1841; when an election being held to fill said office contrary to law, Richard Roman was chosen the incumbent thereof, and the said Roman having applied for the records of the said office, the relator, considering that he was still lawfully in office, refused to deliver them, until being ordered and advised to that effect, that the public business might proceed without hindrance, he surrendered the said papers, books, etc., reserving, however, the right and title of said office, with all its immunities, until the full end of four years from the period of his election. He prayed for a mandamus to compel the said Roman to deliver to him the said office with its records, books, immunities, etc., or show cause to the contrary. The alternative order or mandamus being issued, requiring a compliance with the prayer of the petition or show within one day sufficient cause or warrant for the refusal, the respondent appeared; and it was agreed that the cause should be submitted to the decison of the court in the same manner as was the case of the district clerk (McCrabb v. Bradley), the only point of distinction between the two cases arising from the fact that one office was created by the Constitution and the other was the creature of the law. The testimony of the witnesses was in all respects the same as was given in the case of McCrabb v. Bradley, the relators, McCrabb and Moody, having been elected to the respective offices of district and

mann, 16 T. C. A., 351; Ball v. Bennett, 21 T. C. A., 399; Dreiss v. Faust, 1 App. C., sec. 33; Whitley v. Jackson, 1 App. C., sec. 575; Schwarz v. Burton, 1 App. C., sec. 1216; Scram v. Duggan, 1 App. C., sec. 1269. No presumption will be indulged to supply defects. City Nat. Bank v. Flippen, 66 T., 610; Focke v. Hardeman, 67 T., 173; Perrill v. Kaufman, 72 T., 214; Moore v. First Nat. Bank, 82 T., 537. But literal exactness is not required. Lewis v. Stewart, 62 T., 352.

county clerks on the same day. No statement of facts is sent up with this record, but reference is made to the case of McCrabb for the proof which was adduced. The court awarded a peremptory mandamus against the respondent, and an appeal was taken from the decision. As was stated in the opinion delivered in the case of McCrabb, the testimony, whether the election held in 1838 was to fill the respective offices for their entire terms or unexpired portions thereof, was variant and conflicting; the court below being of opinion that the weight of testimony was in favor of the affirmative, or that the officers were elected for a full term.

We will not enter into an examination of the evidence for the purpose of comparing the same and deciding upon the correctness of the conclusion of the court below in relation to that matter. The judgment of this court would not be modified by the establishment of the one or the other fact, as we are of opinion that the tenure of this office being prescribed by law would not be varied, extended, or diminished by any misconception of the electoral body, as to the period of duration of the office. As the Constitution has not provided for the establishment of the tenure of the office of the clerk of the county court, the law creating the office and fixing its mode of appointment and its tenure must furnish the rule for decision in this controversy. By section 8 of the "act organizing the inferior courts and defining the powers and jurisdiction of the same," page 150, Laws of Texas, volume 1, it is enacted, that there shall be elected by the qualified electors of each county on the first Monday of February next, one clerk of the county court, *who shall hold his office for the period of four years, etc.* There was no election holden in the county of Victoria to fill the office in dispute on the first Monday in February, 1837, as directed by the above law; and for the relief of this and other counties similarly situated, a statute was approved June 12, 1837, authorizing the chief justices of such counties to give notice and hold elections therein for county officers at such time as they might deem proper and in the manner prescribed by law. No allusion is made to the period or term for which the officers elected under the authority of this law shall hold their offices, and the question then arises, whether a clerk of a county court elected by virtue of this latter statute shall hold his office for the period of four years from the date of his election, or only from the space of time intervening between his election and the expiration of four years from and after the first Monday in February, 1837. The act organizing the county courts, above referred to, authorizes the clerk to hold his office for four years. It is true that an election

---

[2] At common law, the seal is an absolute requisite to the validity of a bond. Cayce v. Curtis, Dal., 403; Sloo v. Powell, Dal., 467. It is unknown to the civil law and not essential to the validity of obligations and other instruments. Cayce v. Curtis, Dal., 403; Cayce v. Horton, Dal., 405; Foster v. Champlin, 29 T., 22. The common law term "bond" has never been adopted in this State and it is not necessary for bonds to have private seals. Foster v. Champlin, 29 T., 22; Courand v. Vollmer, 31 T., 397. Under Act of February 5, 1840 (Gammel's Laws of Texas, vol. 2, p. 327), providing that a scroll should take the place of a seal, provided it be recognized in the body of the instrument by the person making it, the recognition was not required to be

was directed to be had for the clerk on the first Monday in February, 1837. But we do not consider ourselves justified in concluding from the terms of the law that there is prescribed a fixed period, certain as to its commencement and termination for the office in controversy.

It is simply provided that he shall hold his office for four years, and not that it shall commence and end in prescribed days, and that should a vacancy occur, elections shall be holden only to complete the unexpired portion of this defined and circumscribed end. The terms of the provision that he shall hold his office for four years are so plain that they can not be elucidated by explanation; and since they are not modified by the subsequent statute or by other provisions of the same act, we are justified in concluding that a clerk of the county court, whensoever elected, and especially when elected under the authority of the statute passed for the benefit of the depopulated counties, is entitled to hold his office by the tenure guaranteed to him by the provisions of the general law, viz., for the term of four years. For authorities in relation to the tenure of office, see 2 Wend., 266; 1 Melord, 233; Bradley v. McCrabb, decided at this term of the court. We perceive no necessity of adding further observation in relation to the tenure of the clerk's office or to the propriety of proceedings by mandamus. They are discussed at some length in the case of Bradley v. McCrabb, and do not require repetition. It is ordered, adjudged and decreed that the judgment of the court below be affirmed.

## No. XI.

### TAYLOR v. DUNCAN.

#### (See Note 49.)

*Appeal from Gonzales.*

MORRIS, JUSTICE.—A motion has been made in this case to dismiss the writ of error granted to Taylor, because the judgment which that writ was granted to revise was rendered previous to any law authorizing such writ, and after the right of appeal, under the laws existing at the time of the rendition of the judgment, had been lost by lapse of time.

The principal questions that arise in the determination of this motion are two: First, that at the time of the rendition of this judgment, was the method known to the law of obtaining a revision in a higher court of a case adjudicated in a lower? Second, whether the laws passed subsequent to that time giving additional or enlarged remedies can be

in any specific terms. The use of any words in the body from which recognition could be fairly inferred, was sufficient. Flemming v. Powell, 2 T., 225; English v. Helms, 4 T., 228; Read v. Levy, 30 T., 738. The first section of Act of 1840 was restraining, and confined to instruments for conveyance of estates of inheritance or freehold or for a term of more than five years, and the intent to seal was sufficient, if expressed in any part of the instrument not within the purview of this section. English v. Helms, 4 T., 228; Clayton v. Pridgen, 8 T., 308; Conner v. Autrey, 18 T., 427; Muckleroy v. Bethany, 23 T., 163; Muckleroy v. Bethany, 27 T., 551; Richarz v. Wolcken, 34 T., 102.

considered as applying either directly or by implication to cases which had been previously adjudicated. The judgment in this cause was rendered in November, 1839, and upon an examination of the statute law of the Republic up to that time, we find that the only means by which a cause could be transferred from an inferior to a superior tribunal in order to its revision by the latter was an *appeal;* the terms, time and manner whereof are variously modified by different provisions in those statutes. Vide 1 vol. Stats., p. 203, sec. 15; 2 vol. Id., p. 94, sec. 1. All of these provisions require the notice of appeal to be given at the term of the court at which the appeal was prayed, and time only was extended by the amendment for the filing of the appeal bond in those instances in which it was necessary that such bond should be given. That time varied from the term at which the appeal was taken, to six days subsequent to the expiration of the term of the court at which the appeal was prayed. But it is contended that we must conclude, from words and expressions in the same statutes, that Congress contemplated some other method of obtaining a revision of the decisions of an inferior by the Supreme Court than appeal. The expressions used in the statutes and referred to as raising this presumption will be found in volume 1, page 79 (statute organizing the Supreme Court), section 3; where it is said "that the Supreme Court shall have jurisdiction over and hear and determine all manner of pleas, plaints, etc., which may be brought before it from any court in this Republic, either by appeal *or other legal process,*" etc. In section 8 "the said court or any judge thereof, in vacation, may grant writs of injunction, supersedeas, and such other writs as the laws permit to the judgments and decrees of the district or county courts, on such terms and conditions as the laws prescribe in cases of appeal, etc., returnable either to the Supreme Court or before any judge of said court, as the case may require." Section 16 requires that a copy of the bond given by the plaintiff shall be transmitted, with a transcript of the record of the cause in which such appeal was taken, or *which may be taken in any other way, to the Supreme Court.*

In volume 1 (under the law organizing district courts, page 203, section 4), the judges of the district courts are authorized, in vacation or term time, to grant writs of habeas corpus, mandamus, and *all other remedial writs known to the law,* returnable according to law, either in the Supreme Court or either of said district courts, as the case may be.

Other sections of law using similar expressions might be found, but as enough have been quoted to place the argument in a fair light before

---

Under Act of 1840, contracts to transfer land certificates and headright claims, were not required to be under seal. Randon v. Barton, 4 T., 289; Bledsoe v. Cains, 10 T., 455. It was not necessary for an obligation to pay money, nor its assignment, to be under seal. Durst v. Swift, 11 T., 273; Jones v. Holliday, 11 T., 412; Holman v. Criswell, 13 T., 38. Nor was it necessary for a contract to sell land to be under seal. Miller v. Alexander, 8 T., 36; Holman v. Criswell, 13 T., 38; Fisk v. Miller, 13 T., 224; Eckhart v. Reidel, 16 T., 62; Martin v. Weyman, 26 T., 460; Courand v. Vollmer, 31 T., 397; Wright v. Lancaster, 48 T., 250, 256; Downs v. Porter, 54 T., 59, 64. A deed without seal or scroll was admissible in evidence to show equitable title in vendee, and deed was entitled to record under section 7 of Act of 1840, though not under seal. Miller v. Alexander, 8 T., 36; Saunders v. Hartwell, 61 T.,

us, we shall now proceed to a consideration of its force and effect. The legitimate method of construing the statute laws of any country is to view them in connection with reference to the fundamental law of that country, on which they must necessarily be based. When the statutes are silent on any subject, or when doubt or difficulties arise as to the intention of the legislators in any statutory enactment, it is the duty of the courts to look to that fundamental law as the rule of decision in the one case, and the proper method of arriving at the intention of the legislators in the other. What, then, at the time of the passage of these various statutes which have been before alluded to, was the fundamental law of the land? The answer is plain: the Constitution of the Republic of Texas and the Spanish civil law as in force in the Mexican confederacy. Upon these as a basis have our statutes been passed, and to these must we look as the guide of our decisions when the statutes are silent, or as the rule of construction when they are doubtful. By reference to that law we find that appeal is the only remedy by which a party conceiving himself aggrieved by the judgment or decree of an inferior court could obtain a revision thereof in a higher tribunal. The terms, time, and other requisites thereto are expressly given. 1 White, 308; Laws Coahuila and Texas, p. 266, art. 109. Our statutes then, as we have seen, prescribe no other specific remedy but *appeal*. And reference to the fundamental law of the land shows no method of appeal analogous to the remedy which has been pursued in this case. That remedy is a writ of error, a writ strictly of common law origin, and which has once been decided by the court as an incident to that system of law, necessarily accompanying its introduction unless expressly excluded. The argument of counsel goes to this extent, that because our Constitution provides that the common law shall at some convenient time be introduced by Congress, and because from the expressions used in the statutes before referred to, it would seem that Congress contemplated some other method of revising the decisions of the inferior courts than appeal, that therefore *that* other method was a "writ of error." That this does not follow we must at once perceive. At the time of the passage of those statutes and the rendition of this judgment, the "common law" had not been introduced as the law of the land; no writ of this nature was given by these statutes; none analogous to be found in the fundamental law to which we must look as the rule of decision; and were we by our decision to declare its existence, we should be traveling further than the law-making power and assuming to ourselves the legislative functions, and

---

679, 686; Tom v. Sayers, 64 T., 339; Frost v. Wolf, 77 T., 455. Act of February 3, 1841 (Gammel's Laws of Texas, vol. 2, p. 608), providing that "when a husband and his wife have sealed," etc., was not applicable to sales of personal property. Stooksberry v. Swann, 12 T. C. A., 66, 73. Act of February 2, 1858 (Gammel's Laws of Texas, vol. 4, p. 968), dispensed with the use of seals on all private instruments, except contracts of corporations. This statute, with the amendment of April 28, 1873 (Gammel's Laws of Texas, vol. 7, p. 503), constitute Rev. Stats. 1895, art. 4862. Harris v. Cato, 26 T., 338; Wimbish v. Holt, 26 T., 673; Read v. Levy, 30 T., 738; Courand v. Vollmer, 31 T., 397; Bernhard v. De Forrest, 36 T., 518; Clayton v. Mooring, 42 T., 182. Under the statute of 1858 and the present law, the following instruments are valid
(516)

by judicial act bringing forth before its time, from the legislative womb, the embryo fetus of the common law .

Upon this point then we must conclude that appeal was the only remedy ·known to our law at the time of the rendition of this judgment. Passing then to the consideration of the second point, it is contended that by the introduction of the common law the writ of error as an incident thereto has also been introduced, and even if that be not true, the statute passed in 1841 has expressly recognized it as one of the modes of appeal; and that under those laws this writ has been properly granted and can rightly be determined by this court. It is not necessary for us to determine in this cause whether by the introduction of the common law the writ of error has also been introduced, nor are we to be considered as so doing. But admit it to be so; let us then examine this case with reference to that statute, and also the subsequent statute expressly authorizing that writ. The fair and proper method of construing statutes is to give them a prospective action, having effect only on causes that may arise subsequent to their passage. Unless therefore express words be used, clearly intimating the will of the legislative body that the operation of a statute should be retrospective, the courts will not give such operation by construction. There is nothing in these statutes which either directly or by implication requires such construction at our hands. But suppose that the intention of the legislative body was that all causes previously adjudicated, where the remedy by appeal had been lost by lapse of time and laches of the parties, should by means of this writ again be revived by this tribunal if the parties so wished; such a statute would be plainly retrospective (1 Cond. Rep. U. S., p. 176) and if it affected the rights of individuals, would under our Constitution be null and void. Const., sec. 16, Bill of Rights. In the case under consideration, the plaintiff had obtained his judgment and the defendant had lost his remedy by appeal, by failing to resort to it in the time prescribed in law. The plaintiff's right had under the law become final and vested. 4 Burrow, 2, 460; 1 Part., 283, Law 19; Id., 311, Law 24; 1 White, 309, sec. 4. A law then which infringes a vested right by retrospective action is void under our Constitution; the judgment in this case was a *vested right* at the time of the passage of these ·laws; therefore so far as affecting that judgment they are null and void. But as we before said, we do not conceive that the remedy introduced by these laws was intended to apply to cases previously adjudicated and settled, for we can not believe that Congress would lend its aid to those who had slumbered over their rights, or that it would violate another

without seal. (a) Appeal bonds. Russell v. McCampbell, 29 T., 31; Read v. Levy, 30 T., 738; Hart v. Kanady, 33 T., 720; Boney v. Waterhouse, 35 T., 178. (b) Attachment bonds. Bernhard v. De Forrest, 36 T., 518 (overruling Read v. Levy, 30 T., 738; Courand v. Vollmer, 31 T., 397; Hart v. Kanady, 33 T., 720); Gasquet v. Collins, 57 T., 340. (c) Certiorari and sequestration bonds. Courand v. Vollmer, 31 T., 397; Clayton v. Mooring, 42 T., 182; Tompkins v. Toland, 46 T., 584. (d) Appointment of substitute trustee. Jacobs v. Mildred, 53 T., 72; Cheveral v. McCormick, 58 T., 440. (e) Official bond of county treasurer and county scrip. De Wees v. Colorado County, 32 T., 570; Parker County v. Courts, 2 U. C., 398. Written contracts of corporations should be under corporate seal, but the ancient and technical

principle, viz., that there should be some end to litigation by calling up the specters of departed causes to pass again in review before the judicial eye; not having expressly done so, we do not feel at liberty to construe such to be their will by implication, especially when after so doing we should then be forced to declare their acts unconstitutional and void. Since the remedy, then, which existed at the time of the rendition of this judgment had been lost to the party by lapse of time, and as the remedies subsequently introduced must be construed as applying only to cases adjudicated since their introduction, we conclude that the writ of error in this case was improperly granted, and must therefore be quashed and the cause dismissed.

*Dismissed.*

## NO. XII.

### JOHN DAVIS v. SYLVANUS HATCH.

*Appeal from Jackson.*

JACK, JUSTICE.—The appellee, Hatch, brought an action in Jackson County against Davis for damages for a failure, as alleged in the petition on the part of Davis, then sheriff of Jackson County, to levy an attachment which Hatch had sued out against one T. S. Mayberry, and for improperly serving other writs of attachment upon the property of Mayberry, which some other creditors of Mayberry had obtained before a justice of the peace. On the trial of the case below the proof was that Hatch on the 10th of September obtained an attachment against Mayberry; that Davis, the sheriff, received the writ of attachment the same day and levied it on the next day. The defendant proved that on the same day C. L. Owen, J. Brown, D. Allen and J. Murry Brown respectively sued out their attachments against Mayberry, on demands cognizable and returnable before a justice of the peace; that those of C. L. Owen and J. Murry Brown were delivered orally to said Allen to execute. That the writ sued out by Allen was delivered to said J. M. Brown to execute on the day of their date. That they were directed to any lawful constable or the sheriff of the county, but there was no written deputation made of either by the magistrate; that neither Allen nor J. M. Brown was a qualified constable; that on the night of that day Allen levied that delivered to him, and J. M. Brown levied Allen's attachment. That on the next morning, the writ of J. Murry Brown, directed as the others, was levied by James A. Sylvester, deputy sheriff of defendant Davis; after which, on that morning, Hatch's attachment was levied. That Owen, Allen and the Browns obtained judgments

rule that a corporation could act and speak only by its corporate seal is obsolete with us. Shropshire v. Behrens, 77 T., 275; Gas Co. v. Harber, 1 App. C., sec. 1123. Where an agent makes a contract under seal, without disclosing his agency, the party with whom he contracts can not elect to hold the undisclosed principal upon the contract. This principle is not changed by our statute. Rev. Stats. 1895, art. 4862; Sanger v. Warren, 91

before a magistrate, took out executions directed to any lawful constable or sheriff of Jackson County; that these executions were delivered to said Sylvester, deputy sheriff, who, having advertised duly, sold the property attached, and applied the proceeds to the executions issued by the justice to the exclusion of Hatch's attachment. The judge in a voluminous charge to the jury instructed them, "that according to the laws, neither the sheriff nor his deputy as such could execute any original or final process issued by a justice of the peace and returnable before such justice in a civil suit." The whole of the charge was excepted to by the defendant, but as the above is the only part of it which we can regard as relevant, we will proceed to determine its correctness. In looking over the act regulating attachments, we find throughout the whole of its provisions that the framers of that statute contemplated the service of writs of attachment by sheriffs, whether issued by and returnable before justices, or from the judge or clerk of the district court. But if any doubt existed as to the power of a sheriff to execute an attachment issued and returnable before a magistrate under this statute, they are altogether removed by a reference to "an act defining the powers and duties of sheriffs," etc. By the seventh section of that act, the power is expressly granted to the sheriff to execute all writs and other process to him legally issued and directed from any justice of the peace or court of record, etc. The charge of the judge below was, we think, erroneous. We are also of opinion that neither under the allegations in the petition nor the proof introduced the defendant could be made liable. It is therefore ordered and adjudged that the judgment of the court below be annulled and reversed.

*Reversed.*

## No. XIII.

### JAMES DENISON, COUNSEL FOR ABSENT HEIRS OF IRA INGRAM, v. SETH INGRAM.

(See Note 50.)

*Appeal from Matagorda.*

HEMPHILL, CHIEF JUSTICE.—Seth Ingram filed his petition in the court of probates for the county of Matagorda in the year 1841, praying to be duly recognized as the sole heir of Ira Ingram, his brother, deceased, and put in possession of his succession with the benefit of an inventory. He alleges that the said Ira Ingram departed this life intestate, or leaving no legal or valid will at the time of his death; that for the purpose of collecting the effects of the estate of the said Ira

T., 472. A contrary rule seems to be announced in Rutherford v. Montgomery, 14 T. C. A., 319, 323.

**Note 39.**—Selkirk v. Betts & Co., p. 471.

The Legislature may regulate the remedy, both as to pre-existing and subsequent rights, as to them may seem proper; and a statute changing or modifying it is not unconstitutional and does not impair obligation of con-

Ingram and of paying the claims against the same, the petitioner administered on the said estate, according to the form, terms, etc., prescribed to him by the judge of the probate court for the said county, etc.    The petition was demurred to by James Denison, attorney for the absent heirs of the said Ira Ingram, deceased, and the same being overruled, a plea was then filed by way of exception, alleging that the said Ira Ingram at his death left a document purporting to be a will; that said document had been presented to the probate court for the county of Matagorda, for probate as a will; that said court upon proof offered admitted the same to probate as a will and declared the same to be the last will and testament of the said Ira Ingram, deceased; that the same is recorded in the records of the said court; that the probate has never been impeached, and that the said Seth Ingram has acted as executor under said will.    The replication to this states substantially that the said Ira Ingram did die intestate, and that the document referred to in defendant's answer was not by the law of the land a will or testament and the same is null and void, and further that the said will has never been admitted to probate or decreed to be executed, according to the law of the land.    The defendant joins issue on the second count of the replication, and excepts to the first as raising a collateral issue.    It was admitted that Seth Ingram was the sole heir of the whole blood of the said Ira Ingram, deceased, but that there was a brother of the half blood, or his heirs, in the United States of America.    The petition was dismissed in the probate court.    On appeal to the district court the decree of the court of probate was reversed, and the cause has been brought to this court for final decision.    From an examination of the pleadings in the above cause, it appears that issue has alone been joined on the question of fact, whether or not the document purporting to be a will of Ira Ingram, deceased, has been admitted to probate and established as his last will and testament, by the court of probate for the county of Matagorda. The question of the validity of the will was not properly raised by the pleadings, and the objection that the issue thereon was collateral was well made by the defendant.    On examining the record for the evidence adduced in relation to the question of probate, or not, of the will, we find that on the 25th of September, 1837, Seth Ingram by petition to the probate court for the county of Matagorda, stated, at the death of his brother, Ira Ingram, that his last will was left in the hands of A. L. Clements, and prayed that the same might be produced for promulgation. In conformity with an order from court for that purpose, the will and codicil thereto were produced on the 26th of September; they were opened and read aloud by the judge.    Evidence was taken to establish

tracts, unless it fails to provide an adequate remedy.    Austin v. White, Dal., 434;  Austin v. Andrews, Dal., 447;  Catlin v. Munger, 1 T., 598;  Gautier v. Franklin, 1 T., 732;  De Cordova v. Galveston, 4 T., 470;  Paschal v. Perez, 7 T., 348;  Grassmeyer v. Beeson, 13 T., 524, 529;  Bender v. Crawford, 33 T., 745, 752;  Moore v. Letchford, 35 T., 185, 214;  Bentinck v. Franklin, 38 T., 458;  Wood v. Welder, 42 T., 396;  Treasurer v. Wygall, 46 T., 447;  McLane v. Paschal, 62 T., 102;  Ward v. Hubbard, 62 T., 559;  Collins v. Warren, 63 T., 311;  Parker v. Buckner, 67 T  20;  Boone v. Chambers, 82 T., 480;  Odum

their execution by the testator, and in the words of the record, "the judge signed at top and bottom of each page of the will, agreeably to law." The will was filed and recorded, and on petition from the said Seth Ingram and Spencer H. Jack, they were appointed dative testamentary executors, or administrators with the will annexed, to carry the said will into execution. They took the necessary oaths and gave the bonds required by law. On a careful consideration of the proceedings before the probate court, we are of opinion that they furnish sufficient evidence of the probate and establishment of the said document as the last will and testament of Ira Ingram, deceased. Under the common law, the granting of letters testamentary is conclusive proof of the probate of a will.

It is true that we find no order directing in express terms the will to be carried into execution. But we can not regard such an entry in so many terms, as absolutely essential to the validity of a judgment establishing a will, as duly proven in the court of probates. Where it appears from the proofs exhibited, as it does in this case, that the probate court received evidence as to the execution of the will, that the same was filed and recorded, that letters testamentary were granted for the purpose of carrying the same into execution, we are compelled to recognize the will as having been allowed and established by the said court. The informalities and irregularities which may appear in the entries of the proceedings of the court will not be sufficient to destroy the effect of such a judgment or rebut the presumption that the same was rendered. The will, then, having been admitted to probate by a court of competent jurisdiction, the next question presented for our consideration is whether this judicial act of the court of probates, being unreversed, operates as a bar or preclusion of the present action. We are of opinion that it does. It is a well established rule of law that the judgment of a court of competent jurisdiction is conclusive of the rights of the parties until the same be reversed or vacated. See Brown v. Gibson and Wife, 1 Nott & McC., 326; Lucas v. Bank of Darien, 2 Stewart, 280; Dufom v. La Frane, 11 M. R., 607. The judgment of the court of probates, being in this instance on a matter embraced within its jurisdiction and the same being unreversed, must preclude any action for the purpose of disposing of the decedent's estate according to the laws which regulate successions, until the revocation or reversal of the said judgment. The question of whether the same can or ought to be reversed, having not been presented by the pleadings, can not properly become the subject of consideration.

Garner, 86 T., 374; B. and L. Assn. v. Newman, 86 T., 380; Standifer v. Wilson, 93 T., 232; League v. State, 93 T., 553; State v. Williams, 10 T. C. A., 346; Insurance Co. v. Shearman, 17 T. C. A., 456; T. M. Ry. Co. v. Telegraph Co., 24 T. C. A., 198; Etter v. M. P. Ry. Co., 2 App. C., sec. 61; Moore v. State, 20 T. App., 280; Maynard v. Freeman (T. C. A.), U. R. C., 1900; Williams v. Bradley (T. C. A.), U. R. C., 1902. Where a statute gives a new remedy, not repugnant nor inconsistent with the old remedy, the latter is not taken away, and parties have their election between the two. Thouvenin v. Rodrigues, 24 T., 468; Etter v. M. P. Ry. Co., 2 App. C., sec. 58; M. P. Ry. Co. v. Parkhurst, 3 App. C., sec. 159.

The conclusions to which we have arrived, on the fact of the rendition of a judgment of a court of competent jurisdiction prohibiting the will, render it unnecessary to express any opinion as to the extent to which the laws of Louisiana were introduced in matter of probate; whether this was a will or not agreeably to the laws of the land, or whether the appellee has by his own acts compromitted his rights to the succession or claimed by him in this suit. These questions are not presented in the pleadings, nor can they arise as long as the judgment of the probate court remains in full vigor unrevoked. Having inspected the record, because it seems to the court here that there was error in the judgment of the court below, it is ordered, adjudged and decreed that the same be reversed; that the petition be dismissed, and that the appellee pay the costs of this suit.

<em>Reversed and dismissed.</em>

## No. XIV.

### ELIZABETH P. TROTT, ADMINISTRATRIX, ETC., v. DAVID PATTON.

(See Note 51.)

*Appeal from Harris.*

BAYLOR, JUSTICE.—Patton sued Elizabeth P. Trott, administratrix, etc., of Henry Trott, deceased, in the court below, for the recovery of sum of $450 due on a joint and several obligation given by Henry Trott in his lifetime, with one Brasfield, to the said Patton. In the petition it is averred that the writing obligatory was executed in the State of Tennessee, one of the United States of America, and that the rate of interest in Tennessee was 6 per cent per annum. The parties below waived the right of trial by jury, and submitted the case to the decision of the district judge. The matters and things being considered by him, he gave judgment in favor of Patton for the debt, with interest at the rate of 8 per cent per annum—there being no proof in the record showing what the rate of interest is allowed by law in the State of Tennessee. The plaintiffs in error, among other objections, seek to reverse the judgment of the court below on the ground that the contract being a foreign one, and 6 per cent alleged in the petition as the rate of interest, it was improper to allow the 8 per cent per annum in the rendition of the judgment. This assignment of error must be sustained. We have already at the present term of this court decided that interest is to be paid on contracts according to the law of the place where they are to be performed, in all cases where interest is expressly or impliedly to be paid. We see no good reason to depart from

---

Note 40.—Stockton v. Montgomery, p. 473.

A law will not be declared unconstitutional unless it is clearly so. Southerland v. De Leon, 1 T., 250; Orr v. Rhine, 45 T., 345; G. B. & C. N. G. Ry. Co. v. Gross, 47 T., 428; Baker v. Torrey, 69 T., 7; Lytle v. Halff, 75 T., 128; State v. McAlister, 88 T., 284; Whitener v. Belknap, 89 T., 273; Railroad Commission v. H. & T. C. Ry. Co., 90 T., 340; Harris County v. Stewart, 91 T.,

this rule of law. The judgment of the court below must therefore be reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

## No. XV. ·

## JOSEPH KENT, ADMINISTRATOR, ETC., v. ALFRED KELSO, SHERIFF, ETC.

*Appeal from Gonzales.*

BAYLOR, JUSTICE.—Joseph Kent, administrator of the estate of Andrew Kent, deceased, filed his petition in the court below, alleging that by virtue of a decree of the probate court for Gonzales County he offered for sale, on the 6th day of October, A. D. 1840, on a credit of six months, a certain parcel of land belonging to the estate of the said Andrew Kent, deceased, containing 800 acres, being a part of the headright league of the said Kent, deceased, situated in the county of Gonzales. At which sale one Miles Dick became the purchaser thereof, and gave his bond with James B. Patrick as his security for the purchase money. That upon default of payment of the amount secured by said bond, the said administrator was entitled by virtue of the statute in such cases made and provided, as well as by the tenor, effect and condition of said bond, to sue out an execution from the probate court for Gonzales County, and by virtue of said execution to sell the property of the said Dicks, or that of his security, for cash to the highest bidder without appraisement. But thereafter, in August, A. D. 1840, upon default of the payment of the sum of money secured by the bond, the said administrator obtained from the probate court for Gonzales County an execution, directed to the sheriff of said county, commanding him that of the goods and chattels, lands and tenements, of the said Dicks, and his security Patrick, he levy and sell sufficient thereof to satisfy the amount of said bond, together with the interest and costs thereon. The said administrator further alleges that Alfred Kelso, the sheriff of said county refused to sell the prperty of the defendants, Dicks and Patrick, without appraisement, and prayed the court below for a mandamus to compel him to do so, or show cause why he had failed to make the money on said execution; that the sheriff be cited to appear, etc. At the next term of the district court for Gonzales County, the sheriff came into open court and acknowledged service of the process. Whereupon the court rendered the following judgment and decree: "Came the parties, by their attorneys, and the defendant having, by indorsement on the petition,

133; Mitchell County v. City Nat. Bank, 91 T., 361; Flannagan v. Nasworthy, 1 T. C. A., 470; Languille v. State, 4 T. App., 312; Ex parte Wilbarger (T. Cr.), U. R. C., 1900; Fletcher v. Peck, 6 Cranch, 87; Parsons v. Bedford, 3 Pet., 433; United States v. Coombs, 12 Pet., 72; Grenada County v. Brogden, 112 U. S., 261; Powell v. Pennsylvania, 127 U. S., 678. The preamble will not be looked to for the purpose of rendering the statute unconstitutional, as it is no part of it. Sutherland v. De Leon, 1 T., 250. United States v. Fisher, 2

admitted the grant, issuance and service of the alternative mandamus prayed for and now in court, declaring his inability to know his duty in regard to the sale mentioned in the petition, without the instruction of the court, and submitting in all things to the order and decree of the court in the premises, it is therefore ordered and decreed by the court, that he make sale of the property, by the petitioner in the case mentioned in the petition, for cash, to the highest bidder, without appraisement," etc. From which judgment and decree the said Miles Dicks, one of the defendants in the execution, prayed an appeal, and seeks to reverse it here on various grounds—the first of which we deem it necessary only to notice, as that will in our judgment be decisive of the case. It is objected by Dicks that the execution mentioned in the petition for a mandamus improperly issued from the probate court, that court having no jurisdiction over the subject matter; but that the district court is the proper tribunal to resort to for judgment and execution, and to that court only, which has exclusive original jurisdiction in the premises. We think the objection well taken, there being no law conferring jurisdiction on the probate court in such cases. It is well settled that consent of parties can not give jurisdiction. The execution in this instance was a mere nullity, having emanated from a court which had no jurisdiction over the subject matter. It must therefore be quashed, the judgment and decree of the court below annulled, set aside and reversed.

*Reversed.*

## No. XVI.

### BOARD OF LAND COMMISSIONERS v. JESSE WALLING, ASSIGNEE.

#### (See Note 52.)

*Appeal from Nacogdoches.*

HEMPHILL, JUSTICE.—Jesse Walling, in his petition, states that Joshua Seeting, then residing in the county of Nacogdoches, did on the day of the date of the declaration of independence sell and transfer to him the claim of the said Seeting to a league and labor of land, to which he was entitled as a resident citizen of Texas and head of a family; that having made application to the board of land commissioners, they refused to issue either to him as assignee, or to the said Seeting, a certificate for a league and labor of land. On the trial before the district court, the said Walling introduced in evidence the instrument purporting to transfer the headright of Seeting to himself, the district attorney excepting to its introduction. It was also proved that Seeting was a citizen of Texas at the date of the declaration of independence; that he was a married man,

---

Cranch, 358; Postmaster-General v. Early, 12 Wheat., 136; Hadden v. Collector, 5 Wall., 107; Y. & M. V. R. Co. v. Thomas, 132 U. S., 174.

**Note 41.**—Forbes, Brooks & Co. v. Hill, p. 486.

Defendant in execution has the right to point out property to be levied on. Scott v. Allen, 1 T., 508; Cloud v. Smith, 1 T., 611; Bryan v. Bridge, 6 T., 137; Wilson v. Smith, 50 T., 365; Atchison v. Hutchison, 51 T., 223; Railway

a head of family, and served in the army in 1835; but it was not proven that Seeting was here at the time of the application for the certificate to the board of land commissioners, nor was he here at the passage of the land law in 1837. The jury returned a verdict in favor of Walling, and from the judgment of the court thereon an appeal has been taken on behalf of the Republic to this tribunal. There are some questions arising from or intimately connected with the consideration of this cause of a magnitude and importance sufficient to exercise the deepest interest and to demand the most patient investigation, but as the urgent and unfavorable circumstances under which we are pressed to the hasty preparation of our opinion will not permit more than an imperfect examination of such point or points alone as are decisive of the controversy, our attention will in this case be directed to the single but controlling question of whether under the laws the appellee could sustain his claim to land as set forth in his petition, without proving, as required by the twelfth section of the land law of 1837, that his assignor was actually a resident of the Republic at the period of the application for the grant. By the provisions of the Constitution, lands are granted to all persons living in Texas at the period of its adoption, viz: to heads of families, one league and one labor of land; and to single men, one-third of a league. But although their claims have thus been sanctioned by the paramount authority of the Constitution, yet no mode was prescribed in that instrument by which an individual could obtain a separate portion of the public domain in satisfaction of his claim, or by which a title for the same might be secured or perfected. No surveys were authorized or titles ordered to be granted for that purpose, but on the contrary it was expressly declared that no survey or title, which might be made after the adoption of the Constitution, should be valid, unless such survey or title was authorized by the Convention, or some future Congress of the Republic. As no process then was provided by the Constitution by which such claimant might receive his share of the public lands, was it competent for those claimants or any of them to institute proceedings before the judicial tribunals of the country against the government, for the purpose of procuring a title or grant to a separate share of the public domain, without the previous sanction of legislative authority for the prosecution of such an action? That it is one of the essential attributes of sovereignty not to be amenable to the suit of a private person without its own consent, has grown into a maxim sanctioned as well by the laws of nations as the general sense and practice of mankind. Such an exemption is enjoyed by all independent sovereignties, and nowhere within the scope of our investi-

---

v. Wright, 88 T., 346; Jackson v. Browning, 1 App. C., sec. 606. Provision of statute requiring officer to request defendant to point out property is directory, and failure to do so does not render sale void, in the absence of fraud. Pierson v. Flanagan, 52 T., 266; Odle v. Frost, 59 T., 684; Allen v. Pierson, 60 T., 604; Stone v. Day, 69 T., 13; Beck v. Avondino, 82 T., 314; Alexander v. Benner, 10 T. C. A., 111; Fatheree v. Williams, 13 T. C. A., 430; Ellis v. Harrison, 24 T. C. A., 20; Barbee v. Heflin, 1 App. C., sec. 744; McKennon v. McGown (T. Sup.), U. R. C., 1889. Only entitled to reasonable opportunity to point out, and officer is not required before making levy to

gation has the institution of judicial proceedings to recover claims from a State or nation been regarded as a matter of natural, legal or constitutional right. Governments are instituted to promote the happiness of the whole community, but their beneficent powers would be paralyzed and their ends defeated were they subjected to the embarrassments, arising from the perpetual suits which, were they matters of right, could be prosecuted by every individual for the redress of real or supposed grievances. The experience of ages and the wisdom of the most enlightened statesmen and judicial expositors have sanctioned the doctrine, that less injury would arise from the delay or even the denial of justice to individuals than from the distraction and imbecility consequent upon the government's being involved in continual and harassing controversies, at the will or caprice of every citizen in the community. We intend not, however, to consider or combat the objections which have been urged against this great conservative principle. It has long been established even in governments most favorable to human liberty, and can not be questioned or controverted That wise governments will always do justice to its individual citizens is to be presumed, but should it be refused or delayed, and if for reasons essential to the safety or welfare of the State, or if even from the mere exercise of despotic authority, the government would not consent that claims against itself should be adjudicated in courts of justice, it would be impossible to obtain relief through the instrumentality of judicial proceedings. The wrong might be of a grievous nature, but the powers of judicial tribunals, however great they may be, are not of a character so transcendent as to enable them to afford the remedy. Vide 3 Story on Const., p. 535; Federalist, No. 80; Chisholm v. Georgia, 2 Dall., 419; 2 Pet., 635, 674; 1 Black. Com., 241, 243; 1 Term Rep., 172.

As the appellee then could not sue the government without its consent expressed in a legislative act, let us inquire whether there is any such provision of law as would authorize him to appear before any tribunal and obtain any such warrant or order as would secure a survey and title for the amount of land embraced in his claim. By the eleventh section of an act to reduce into one act and amend the several acts relating to the establishment of a general land office, passed December 14, 1837, boards of land commissioners were established in the several counties for the investigation of headright claims to land, and upon the production of the proof prescribed by the law they were authorized and required to grant

---

seek defendant out of the county. Cook v. De la Garza, 13 T., 431; Sydnor v. Roberts, 13 T., 598; Kendricks v. Rice, 16 T., 254; Choate v. Redding, 18 T., 579; Atchison v. Hutchison, 51 T., 223, 233; Kingsland v. Harrell, 1 App. C., sec. 739. May be pointed out by agent of defendant. Cornelius v. Burford, 28 T., 202. By plaintiff or his agent when defendant fails to point out. Bryan v. Bridge, 6 T., 137; Kendrick v. Rice, 16 T., 254; Batte v. Chandler, 53 T., 613. By surety when his principal fails to do so. Martin v. Rice, 16 T., 157. Officer is not required to find personal property to levy on. Smith v. Frederick, 32 T., 256; Pierson v. Flanagan, 52 T., 266; Anderson v. Oldham, 82 T., 22; Ellis v. Harrison, 24 T. C. A., 20. Officer is not bound to levy on property pointed out by defendant when it does not belong to him or when it is exempt property. Ross v. Lister, 14 T., 469; Carey v. Tinsley, 22 T., 383;

certificates to the claimants. The twelfth section provides for the number of witnesses, as well as the facts, which must be established before the issuing of a certificate; the purchaser of a headright being required to prove that the person represented as entitled to the same was actually a resident in the Republic at the time the application for the grant was made. The question arises, then, whether the appellee, as purchaser of Seeting's headright, could obtain a certificate on any other proof than such as was required by the law. This authority to sue the Republic for his claim was derived from this law, and without this or some other legislative act it could not have been investigated by any tribunal, whether of limited or general jurisdiction. Can he then invoke the aid of this law for the purpose of perfecting his title, with complying with the conditions which qualify the tender of its assistance? As it was through the agency of Congress alone that land claims could be established into grants, it was surely competent for that body to prescribe the conditions and proofs essential to the recognition of these claims, and its power for that purpose is assuredly not to be questioned, when its exercise does not conflict with any of the provisions of the Constitution. We can not perceive that this fundamental law is violated by the requisition of the statute, that where claims, similar to the one in dispute, are set up against the government, the purchaser should be required to prove that his vendor was a resident of the Republic at the period of the application for the grant. We will not now enter upon a review of the various provisions of the Constitution to sustain this position, nor do we intend to decide any questions relative to sales of lands, or the requisites which may be supposed essential to their validity. Under the law of 1837, purchasers of headrights are entitled to certificates therefor, on making the necessary proof. This law only provides for such claims as are recognized under the same. It does not invalidate, in express terms, any claims to lands of any description, if we except the prohibition of suit by alien empresarios, though there may be various classes thereof, for the establishment of which no provision has been made. Should there be such claims in existence, they must, without further legislative action, continue to lie, as they do now, in a dormant condition. Legislative energy can alone quicken them into life, and sustain them to maturity; they can neither be surveyed nor perfected into a grant, and if they were, neither the surveys nor title could possess validity, the same having been made without the sanction of the Convention, or of a Congress of the Republic. It is hereby ordered, adjudged and decreed, that the judgment of the district court be and the same is hereby reversed.

*Reversed.*

Garvin v. Hall, 83 T., 295. Validity of sale is not affected by return failing to show that defendant was called on to point out property, or who pointed it out, or that notice of sale was posted as required by law. Howard v. North, 5 T., 290; Sydnor v. Roberts, 13 T., 598; Crabtree v. Whiteselle, 65 T., 111.

## No. XVII.

### JOHN GREGG v. JOHN YORK.

(See Note 53.)

*Appeal from Milam.*

OCHILTREE, JUSTICE.—In this case York sued out an original attachment against the estate of Gregg, returnable to the spring term of the District Court of Milam County, for the sum of $3400. At the fall term, 1840, of said court, a judgment was rendered against the defendant, from which said judgment a writ of error was taken to this court. It is not essential to a proper disposition of this cause that we should pronounce in detail upon the various errors assigned, but will confine our opinion to that assignment which sets forth that there is a material variance between the grounds of attachment sworn to in the affidavit of York and those recited in the writ of attachment as having been sworn to by him. The ground set forth in the affidavit is, that the said John Gregg resides beyond the jurisdiction of the courts of the Republic, so that the ordinary process of law can not be served on him; and further, that the said John Gregg is so making way with his property, that the said plaintiff will be likely to lose his debt. The writ describes the affidavit as follows: "Oath also having been made that the said John Gregg absconds or secretes himself, or resides beyond the jurisdiction of the court, so that the ordinary process of law can not be served against him, or is about to remove his property beyond the jurisdiction of the court," etc. Ala. Rep., 14. The writ of attachment is a summary remedy created by statute; the statute should be followed in all respects, and all the incidents pertaining to the remedy must be strictly complied with. See McCord, 312. Inasmuch as there is a material departure from the affidavit in the writ, the latter should have been quashed below, when the motion was there made. The writ is also double and uncertain as to the ground on which the plaintiff intended to found his attachment, and is not of such a definite and certain character as would enable the defendant to know what he had to answer, so that he might plead thereto a direct and unequivocal plea. 1 Chitty, 285. We are therefore of opinion that the court below erred in refusing to quash the attachment, and that the judgment below be reversed and annulled.

*Reversed.*

---

**Note 42.**—Tinnen v. Matthews, p. 491.

[1] Entire day should intervene between judgment by default nisi and the final judgment. O'Connor v. Towns, 1 T., 107; Wheat v. Davidson, 2 T., 196. Facts alleged in the petition are taken to be true and proven when judgment is by default. Long v. Wortham, 4 T., 381; Willard v. Conduit, 10 T., 213; Crain v. Griffis, 14 T., 358; Guest v. Rhine, 16 T., 549; Watson v. Newsham, 17 T., 437; Prince v. Thompson, 21 T., 480; Ricks v. Pinson, 21 T., 507; Morrison v. Van Bibber, 25 T. Supp., 153; Farr v. Wright, 27 T., 96; Niblett v. Shelton, 28 T., 548; Boles v. Linthicum, 48 T., 220; Evans v. Daniel, 25 T. C. A., 362; Mason v. Slevin, 1 App. C., sec. 11; Hawkins v. Haney, 1 App. C., sec. 723; Johnson v. Dowling, 1 App. C., sec. 1090; Whitaker v. Wallis, Landis

## No. XVIII.

### WILLIAM PATTERSON v. BRYAN AND KARNES.

*Appeal from Bexar.*

OCHILTREE, JUSTICE.—Patterson sued Bryan and Karnes in an action of debt on a protested draft. The defendants came into court and in general terms denied any indebtedness. Under this plea or answer, the defendants offered to prove by the books of the late firm of Bryan & Karnes that the plaintiff was indebted to the defendants in a sum exceeding the amount of the instrument sued on by the plaintiff, which testimony was rejected by the court as inadmissible under the plea of the defendants, on the ground that there was no plea or answer of the defendants stating such defense with a bill of particulars, and that so the evidence would operate surprise to the adverse party; to which opinion of the court the defendants' counsel excepted, and appealed to this court. The defendants' plea was filed on the 12th March, 1841, nearly twelve months after the passage of the statute allowing discounts and set-off, which is so entirely plain and positive in its terms that we can give no stronger reason for affirming the judgment of the court below, than by referring to the second section of the said act—page 62, Laws of 1840. We are therefore unanimously of the opinion that the judgment of the court below be affirmed, with 10 per cent damages thereon for delay, etc.

*Affirmed.*

## No. XIX.

### GEORGE HUFF, ADMINISTRATOR, ETC., v. JAMES K. McCREARY, CLERK, ETC.

#### (See Note 54.)

*Appeal from Austin.*

OCHILTREE, JUSTICE.—In this case, which was brought up by appeal from the county of Austin, it appears that the plaintiff instituted an action of debt against W. P. Huff and Thomas Barrett, by filing his petition in the office of the defendant, who was the clerk of the District Court of Austin County; that the defendant failed and refused to issue the citation prayed for in the petition as required by law, unless the plaintiff should first pay the cost thereof. At the fall term, 1841, of the district court, the plaintiff filed his motion for a rule against the defendant to show cause why he had not issued the writ of citation prayed for. The clerk answered to the rule, that the papers were duly prepared by him and tendered to the plaintiff upon the payment of costs, or on the plaintiff entering into security therefor. The rule was

discharged by the court below. By reference to the act of Congress establishing the jurisdiction and powers of the district court, volume 1, section 17, page 203, it will be seen that when any original process shall issue out of any court in this Republic, the plaintiff at the *return* of such process, or any time thereafter before final judgment, shall upon the motion of any person interested be ruled to give sufficient security for all costs, etc. The terms of the act gave the clerk no discretion. It was his imperative duty to have issued the citation and on the *return* of the process, or at any time thereafter, he might have made his motion for security for costs.

The rule should have been granted. It is therefore the unanimous opinion of the court that the judgment of the court below be reversed and the case remanded.

*Reversed and remanded.*

## No. XX.

### HUFF, ADMINISTRATOR, ETC., v. FOLGER, LAMB & CO

**(See Note 55.)**

*Appeal from Austin.*

BAYLOR, JUDGE.—Folger, Lamb & Co. sued Huff as the administrator of Samuel Sawyer, deceased, for the recovery of $1659.69, due by promissory note averred to have been lost during the revolution. They obtained a special verdict in their favor for the sum of $2499.35, being the amount of principal and interest for ten years at 5 per cent. The jury also found that the debt was contracted at New York, in the United States of America, and from the time of Huff's last acknowledgment of the debt to the time of commencing suit, a little longer than three years. On this verdict judgment was rendered for the plaintiffs, which is sought to be reversed here on the ground that the verdict and judgment is for interest at 5 per cent when no interest should have been allowed, or if any it should have been the interest of the State of New York, one of the States of the United States of America. Upon an examination of the facts of the case as certified to by the judge below, we find no proof therein contained showing what rate of interest is allowed by law in the State of New York, and as interest was computed by the jury at 5 per cent per annum for ten years, the supposed interest of this country, we think this was manifestly wrong. Where a contract is made in another country and with reference to that country, it must be governed by the laws of the place where it is to have its

& Co., 2 App. C., sec. 560; Welch v. Holmes, 2 U. C., 342. To warrant, facts must be stated with sufficient certainty to inform the court what judgment to enter without looking to evidence not within allegations. Judgment is void, if no cause of action is alleged in petition. Hall v. Jones, 3 T., 305; Johnson v. Davis, 7 T., 173; Pressly v. Testard, 29 T., 199; Townsend v. Ratcliff, 50 T., 148; Kimmarle & Hirsch v. H. & T. C Ry. Co., 76 T., 686; Hawkins v.

effect, and foreign laws must be proved as facts. The district court could not therefore judicially know, unless from the finding of a jury on evidence submitted to them (which the record shows was not the case in this instance), what rate of interest is allowed in the State of New York; under such circumstances neither the court nor the jury were authorized to give the supposed rate of interest of this country. See Story's Conflict of Laws, pp. 241, 291, and the authorities there cited. It is therefore the unanimous opinion of the court that the verdict be set aside, the judgment reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

## No. XXI.

### REBECCA CUMMINGS, ADMINISTRATRIX, v. ANTHONY BUTLER.

*Appeal from Austin County.*

JACK, JUSTICE.—This cause is brought into this court by a writ of error from Austin County. The plaintiff in error assigns among various other grounds, "that after judgment by default, and a writ of inquiry being ordered upon an unliquidated demand, the judgment was made final by the court without the intervention of a jury." The record shows that the defendant having failed to appear and answer, on motion of plaintiff's attorney judgment by default was rendered by the court, Friday, the 27th of April. This case was submitted to the court, whereupon judgment was rendered by the court against the defendant for the amount of $400, with interest from the 7th of April, 1839, till paid. The statute prescribes (volume 4, page 89) that in suits upon unliquidated demands the intervention of a jury must be had to ascertain the amount of indebtedness, before the judgment by default can be made final. Upon this ground the judgment of the district court must be reversed and remanded. It is therefore unnecessary to discuss the other causes of error which have been assigned.

*Reversed and remanded.*

## No. XXII.

### REBECCA CUMMINGS, ADMINISTRATRIX, v. OLIVER JONES.

(See Note 56.)

*Appeal from Austin County.*

JACK, JUSTICE.—This cause is brought by appeal from the District Court of Austin County. It was an action brought in that court by

Haney, 1 App. C., sec. 723; Stringfellow v. Thomson, 1 App. C., sec. 1111; Seastrunk v. Pioneer S. & L. Co. (T. C. A.), U. R. C., 1896. It can not be rendered on a contract different from that alleged in petition. Trabue v.

Oliver Jones against Rebecca Cummings, administratrix of John Cummings, to recover damages on a breach of covenant by the intestate in his lifetime. There was a verdict for the plaintiff, a new trial was asked for and refused by the court, and the defendant appealed. The record contains a statement of facts, certified by the judge below, containing many material facts as to the contract and breach thereof on the part of the intestate, and damages sustained by the plaintiff. But it does not show that the plaintiff proved a demand of the administratrix and her refusal to allow the claim as a debt against the estate. The counsel for the appellee insist that this court ought to presume that a demand was proven, inasmuch as the defendant's counsel below raised no objections to the want of such evidence, nor asked any charge of the judge in relation to it. This position would, we think, be correct, if the record itself did not contain a certificate of the judge that the statement of facts sent up contains all the evidence introduced on the trial below. We are bound to take the record as true. The question then presented to us is: did the plaintiff make out his case in the district court? The statute (volume 4, page 116) directs, that no bearer of a claim against a succession shall commence an action against such succession before presenting such claim to the administrator, etc., for allowance. That if the claim be not allowed by the administrator, the owner thereof, *for the purpose of establishing the same,* may bring his action, etc.

The petition must contain an allegation of such demand and refusal, and it is equally necessary to prove it. This proof in the case before us was not made in the trial below.

The verdict of the jury was not sustained by the evidence and a new trial ought to have been granted.

Let the judgment be reversed and the cause remanded.

*Reversed and remanded.*

## No. XXIII.

### Cavenah v. Somervill.

*Appeal from Matagorda County.*

OCHILTREE, Justice.—We learn from the record sent up in this cause that at the fall term, 1840, of the District Court of Matagorda County, Alexander Somervill, the defendant in this action, recovered a judgment against Charles Cavenah, the plaintiff, and one Randal Jones, for the sum of $1000, with interest and costs, upon a note executed by said Cavenah and Jones to one Secrest, and by Secrest indorsed to Somervill. After the issuance of execution on said judgment, Cave-

Stoneum, 20 T., 453; Graves v. Farquhar, 20 T., 455; Johnson v. Stallcup, 41 T., 529. Nor when petition discloses a void or illegal contract. Moseley v. Smith, 21 T., 441; Campbell & Jones v. State Central Bank, 1 App. C., sec.

nah filed his petition, praying that the said judgment be enjoined, alleging the same to have been unjust, illegal and oppressive, for this, that the consideration for which said note was executed was insufficient, fraudulent, illegal and void. He further alleged, that at the trial at law he was prevented from attending court by the severe indisposition of himself and family; that about the time of the court his son-in-law died, so that his presence was imperatively required at home; that he had confided his defense to one Edward L. Homes, Esq., an attorney at law, who died before the trial, and that the attorney to whom his business had been committed, from the fact that he had not an opportunity of conferring with Cavenah, did not introduce the necessary testimony to establish his defense. Upon this petition, his honor, Wm. J. Jones, judge, etc., issued his order for a writ of injunction. Somervill, having been brought into court, demurred to the bill of Cavenah, on the ground that he, the said Cavenah, had appeared by counsel in the suit at law, and by his said counsel had pleaded the general issue, and that the matters and things set forth in his bill were properly cognizable before that tribunal, praying judgment, etc. The demurrer was overruled. Somervill then answered over, denying his knowledge of the consideration given for said note to Secrest, alleging that he had got it in the fair course of trade for a valuable consideration; denying all fraud or collusion in the transaction on his own part, or knowledge of it on the part of others. Upon this issue the cause was submitted to the jury; and the evidence proved that the note sued on had been made for the purpose and was staked on the event of a horse race, which was run between the horses of Secrest and Cavenah, and fairly won by Secrest. A verdict was returned for the plaintiff. We do not deem it necessary to recite any further portion of the testimony or proceeding in this case, saving so much of the charge of the presiding judge as was applicable to such points in the case as we feel it incumbent on us to decide. The court charged the jury that if they believed the note was based upon a gaming transaction, they should find for the plaintiff. The court charged further that at the civil law, horse racing was a species of gambling. The points in this case, presented for the action of this court are these:

1.   Did the court below err in refusing to sustain the demurrer to the bill for injunction?

2.   Could not Somervill, a bona fide holder, recover on the note?

Without expressly answering the first question, this court will intimate the opinion that it will at all times view with the strictest scrutiny applications for relief on the chancery side of our courts, against judg-

---

160.   When citation is by publication, judgment by default does not dispense with proof of material facts.  Doty v. Moore, 16 T., 591.

²Nature, validity, obligation, construction and interpretation of contracts are determined by the lex loci contractus, unless a different place is fixed by the parties for performance.  Hill v. McDermott, Dal., 419;  Huff v. Folger, Dal., 530;  Scott v. Maynard, Dal., 548;  Gautier v. Franklin, 1 T., 732;  Hays v. Cage, 2 T., 501;  Snoddy v. Cage, 5 T., 106;  Andrews v. Hoxie, 5 T., 171, 189;  Campbell v. Wilson, 6 T., 379, 390;  Raymond v. Holmes, 11 T.,

ments at law rendered, as was the judgment in this case, after issue joined. Hard cases should not subvert established precedents. The sickness and other misadventures, as set forth in the petition of Cavenah, certainly would have afforded him ground for relief in equity, if it had appeared from the record that he was wholly unrepresented when his case was called for trial. But this was not the case; for his petition admits and the record shows that his attorney pleaded the general issue, and that under this issue the cause was submitted to the jury, and a verdict returned for Somervill, the then plaintiff. It would certainly be a violent presumption to suppose that Cavenah would have employed an attorney and left him in total ignorance of the nature of his defense. We will not say that the court erred in charging the jury that horse racing was such a species of gaming under the civil law as would preclude a recovery on a contract founded thereon. In this case the necessity does not exist for the exercise of that sort of judicial legislation which has been assumed by the courts both in England and many of the United States, by which they undertake to declare what is and what is not contrary to public policy.

Somervill answers, that he is a bona fide holder of the note; and no proof has been introduced to show that there was a scienter on his part, of the nature of the consideration for which the note was given, or the time at which he became the owner. Horse racing not having been declared by the civil law illegal, nor inhibited by statute, the innocent holder is entitled to recover. Chitty on Bills, p. 52. A motion for a continuance before trial, or for a new trial after verdict, would, we have but little doubt, have been sustained by the court who granted the injunction. These were the legitimate resorts of the party; having failed to make use of them, this court is not prepared to say that the plaintiff made such a showing as justified the court below in sustaining the bill for injunction. Illegality of consideration, unless it has been so expressly declared by the Legislature, will be no defense in an action at the suit of a bona fide holder without notice of the illegality, unless he obtained the bill after it became due. Chitty on Bills, 82.

The judgment of the court below is reversed, the injunction dissolved, and a procedendo awarded to the District Court of Matagorda County.

*Reversed.*

Judge Baylor says: "I concur in this opinion so far as the illegality of the injunction is concerned, but give no opinion on the other points involved in the case."

54; Hall v. Harris, 11 T., 300, 305; McLeod v. Board, 30 T., 238; Cantu v. Bennett, 39 T., 303; Weider v. Maddox, 66 T., 372; Life Assn. v. Harris, 94 T., 25; Appollos v. Standiforth, 3 T. C. A., 502; Merrielles v. State Bank, 5 T. C. A., 483; Tilliard v. Hall, 11 T. C. A., 381; M. K. & T. Ry. Co. v. Thompson, 11 T. C. A., 658; M. P. Ry. Co. v. Harris, 1 App. C., sec 1265. By place of performance. Ryan v. M. K. & T. Ry. Co., 65 T., 13; Seiders v. Life Assn., 93 T., 194; Life Assn. v. Harris, 94 T., 25; Good v. Caldwell, 11 T. C. A., 515; Applebaum v. Bates, 3 App. C., sec. 167. If to be partly performed in dif-

## No. XXIV.

### MAIDEN v. FARIS, BROWN AND CALDER.

*Appeal from Brazoria County.*

MORRIS, JUSTICE.—At the March term of the District Court for
the County of Brazoria, in the year 1841, a judgment was obtained by
the plaintiff against George Brown and Robert S. Calder by default
(the action as to Faris having abated by his death). The suit was for
damages for failure to comply with the conditions of a bond given by
defendants, which bond was the foundation of the action, and the jury
assess the damages at $1000. The record is brought into this court by
writ of error and the following assigned as error: "that the judgment
was rendered against Brown and Calder, when no sufficient service had
been made upon Brown, one of the defendants." By reference to the
record, we find the sheriff's return upon the writ and petition in these
words: "Served George Brown with a copy of this writ and petition,
by leaving the same at his house, on the 26th of February, 1839; serv-
ice accepted by Calder." By reference to volume 1, Statutes of Texas,
p. 201, we find that personal service of all process was required to be
made on the defendant; and not until the 5th of February, 1840 (4th
volume, p. 88), was that law modified or changed. We find that this
writ and petition were issued and served previous to the passage of the
last law. The defendants neither appeared nor answered, and the judg-
ment went by default.

The defect is fatal, and the cause must be remanded for a new trial.

*Remanded.*

## No. XXV.

### MONROE EDWARDS v. THE REPUBLIC OF TEXAS.

#### (See Note 57.)

*Appeal from Brazoria County.*

OCHILTREE, JUSTICE.—Monroe Edwards, the plaintiff in error,
was brought by writ of habeas corpus before the Hon. James W. Robin-
son, district judge, etc., on the 7th day of May, 1839, and after the
hearing of testimony was recognized in the sum of $10,000, conditioned
that he should make his appearance before the honorable the District
Court for the County of Brazoria, at a court which was held at Bra-
zoria on ———, to answer a charge of forgery. At the fall term, 1839,
of the District Court of Brazoria, Edwards having failed to appear, a

ferent States, intention of parties governs. Ryan v. M. K. & T. Ry. Co., 65
T., 13. Seems that marriage contracts are an exception to general rule of
lex loci contractus. Shreck v. Shreck, 32 T., 578. If subject of contract is
land, the lex loci rei sitas governs. A mortgage executed without the State,

forfeiture of his recognizance was taken and a judgment nisi was entered against him; which judgment, without the issuance of scire facias, was made final at the next succeeding term of the court. On the 29th of November, 1842, Edwards, by his attorneys, Harris and Pease, addressed a petition to the Hon. R. E. B. Baylor, judge of the Third District, praying that writs of error and supersedeas might be granted, and that the record of the above stated case might be sent up to the Supreme Court for its adjudication. The prayer of the petitioners was granted.

Without entering upon the consideration of the various errors assigned in this case, we are of opinion that there is a preliminary question which will dispose of it. Should the writ of error have been granted on the petition of the *attorneys* of Edwards?

To fly from the laws and justice of his country has been wisely held to be one of the most heinous offenses of which man can be guilty; and while he continues contumaciously to evade those laws by force, or absence, he is certainly not entitled to any very particular protection. Were a practice like the present to obtain, the administration of justice in criminal cases would soon be little better than a farce. An offender against the laws, who had been so fortunate as to obtain bail, would certainly in every instance try the strength of his recognizance before he would submit his person to the ordeal of justice. If the judgment of forfeiture should be reversed, his securities would be saved harmless, while he himself would escape, "unwhipped of justice," to perpetrate his villainies upon the unfortunate community which had afforded him shelter. The remedy provided by the common law is commensurate with the offense, and though we have eschewed the process of outlawry as being incompatible with the genius of our institutions, yet we think that from the analogy which exists between the cases, we are fully authorized to retain the requisition of the common law, as applicable strictly to applications for writs of error in cases of outlawry, and to pronounce it as the judgment of this court, that in order to obtain a writ of error it is necessary in all criminal cases, on the trial of which his personal appearance is required by law, that the applicant should render himself into custody and come in person to the proper authority to pray it to be allowed him. 1 Chitty Crim. Law, 369.

Writ of error dismissed at the cost of the petitioners.

*Dismissed.*

---

contrary to its laws or public policy, is void. Cantu v. Bennett, 39 T., 303; Fowler v. Bell, 90 T., 150. Contract valid under lex loci contractus is valid everywhere, unless in contravention of lex fori. If void under lex loci contractus, void everywhere. Andrews v. Hoxie, 5 T., 171, 189; Shelton v. Marshall, 16 T., 344; Ryan v. M. K. & T. Ry. Co., 65 T., 13; Weider v. Maddox, 66 T., 372; Fowler v. Bell, 90 T., 150; Tuckett v. Herdic, 5 T. C. A., 690; T. & P. Ry. Co. v. Davis, 2 App. C., sec. 191. If lex loci contractus is not alleged and proved, lex fori will be applied. Hill v. McDermitt, Dal., 419; M. K. & T. Ry. Co. v. Cocreham, 10 T. C. A., 166. Whether a writ is wrongfully sued out, is determined by the laws of the State where it was obtained. Wiley v. Traiwick, 14 T., 662.

## No. XXVI.

EDWARD C. BEAZELY v. SAMUEL STINSON AND THOS. H. WOLF.

*Appeal from Harrison County.*

HEMPHILL, CHIEF JUSTICE.—This cause comes before this court upon an appeal from the District Court of Harrison County. The record shows that it was an action brought by the plaintiff for the recovery of the books, papers, etc., belonging to the office of the clerk of the County Court of Harrison. The plaintiff, Beazely, and the defendant, Wolf, both claim to be clerk; and the defendant pleaded that Pulaski and not Marshall was the legal seat of justice of Harrison County. The judge below overruled the plea as to the seat of justice of the county, and decided that Thomas H. Wolf was legally the clerk of the county court; and from this decision the plaintiff appealed. From the statement of facts which comes up, it appears that one C. K. Andrews was the clerk of the County Court of Harrison County previous to the division of that county into Harrison and the judicial county of Panola by an act of Congress. After such division Andrews became a candidate for and was elected clerk of the County Court of Panola, and Thomas H. Wolf was duly elected clerk of Harrison and entered upon the discharge of his duties; and Pulaski was selected as the seat of justice for Harrison County. Subsequently to these proceedings, the Supreme Court decided that the acts creating judicial counties were unconstitutional. Andrews then resigned his office of clerk of the County Court of Harrison County. The chief justice of Harrison County subsequently issued writs of election for clerk of the county court, when Beazely, having received the highest number of votes, claimed to have been legally elected clerk, gave bonds, etc. After the decision of the Supreme Court before alluded to, the chief justice of Harrison County issued writs of election, under the general law for the removal of county seats (see Acts of Congress, adjourned session of 1838, p. 1), when the town of Marshall received a majority of votes. It also appears from the statement of facts that Marshall is within five miles of the center of the county of Harrison. This court is of the opinion, under all the circumstances, that Andrews having accepted the office of clerk of the County Court of Panola County, an office which was incompatible with the discharge of the duties of his former office of Clerk of Harrison, he thereby vacated the same; and that the election of Wolf was legal, and that he, being the clerk of Harrison County, and in the discharge

---

**Note 43.**—Manlove v. Kinney, p. 493.

Notice of appeal is essential to appellate jurisdiction, and can not be waived. Lockhart v. Lockhart, 1 T., 200; Burr v. Lewis, 6 T., 76; Bennett v. Spillers, 7 T., 600; Hughes v. State, 33 T., 683; Thomas v. Childs, 36 T., 148; Loften v. Nalley, 28 T., 127; Holek v. Varona, 63 T., 65; Smithwick v. Kelly, 79 T., 564; Nickerson v. Nickerson, 65 T., 281; Western Union Telegraph Co. v. O'Keefe, 87 T., 423.

of his duties as such, and there being no vacancy, the election of Beazely was not authorized by law and could not confer the office upon him. The election for the county seat having been held according to law, and the place selected being within five miles of the center, was in compliance with the statute. We are therefore of opinion that the town of Marshall is the legal county seat for Harrison County. The judgment of the court below must therefore be affirmed.

*Affirmed.*

## No. XXVII.

### MᶜILHANEY v. SECREST.

*Appeal from Fort Bend County.*

MORRIS, JUSTICE.—Secrest filed his petition in the District Court of Fort Bend County to enforce the execution of a deed from said Mc-Ilhaney to a certain tract of land, the equitable title to which the said Secrest alleged to be in himself. He stated at the close of his petition that defendant was a transient individual; that he was unacquainted with his place of residence, whether in the Republic or not; that ordinary citation might not be able to reach him; he therefore prayed publication of his petition, citing the party defendant to appear, etc. This prayer was granted by the court and publication ordered to be made for sixty days in some public gazette. At the term next succeeding the issuance of this order, a decree was entered in favor of plaintiff. A writ of error has been prayed for and granted to the defendant, and the record is sent up for the revision of this court. The error assigned is, that there was no sufficient or legal notice given to the defendant previous to the rendition of the decree—said judgment or decree having gone by default. By referring to the record we find that no copy of the writ or petition has been issued or served on the defendant. The only notification ever given or attempted to be given by the plaintiff of the pendency of his action was by the publication ordered by the judge to be made in accordance with his prayer. Our statute law nowhere authorizes or legalizes the service of process of any kind than personal service, with the single exception of cases of attachment, where in special cases mentioned it is required to give notice of the pendency of the attachment suit in some public gazette, etc. Texas Laws, vol. 5, p. 187. The first law with regard to the service of process, necessary to notify a party of the pendency of any action, confined it to the person. Texas Laws, vol. 1, p. 201. This was subsequently amended so far as to make serv-

---

Note 44.—McGill and Wife v. Delaplain, Administrator, etc., p. 493.

Court can not compel party to take nonsuit. Guest v. Guest, Dal., 394; Thomas v. Hill, 3 T., 270; Sandoval v. Rosser, 86 T., 682, 686.

ice sufficient, where a copy was left at the residence of an individual (Texas Laws, vol. 4, p. 88) ; which amendment has been since repealed, and the law now stands as it *aforetime was.* No authority is given then in our statute law to notify a party defendant of the pendency of an action against him, *in ordinary cases,* by publication. The case under consideration does not come under the provisions of the attachment law, and certainly the averment in his petition, which is not positive, and which does not show that it was impracticable to pursue the ordinary requisites of the law, ought not and did not authorize the court to permit a resort to a method of notification not provided for by our law and exceedingly questionable in any instance. The judgment must therefore be reversed and the cause remanded.

*Reversed and remanded.*

## No. XXVIII.

### SAMUEL WHITING v. THOMAS R. MARSTON.

*Appeal from Harris County.*

OCHILTREE, JUSTICE.—Marston sued Whiting in the District Court of Harris County at the spring term, 1840, in an action of debt. Whiting filed his plea in abatement on oath to the jurisdiction of the court, averring that he was, at the time of the commencement of the suit and at the trial thereof, not a citizen of Harris County, but a citizen of Travis County. The parties joined issue on the plea, waived a jury, and submitted the case to the presiding judge upon the evidence offered. On an examination of the testimony, we do not feel inclined to disturb the judgment of the court below. Let it be affirmed with damages for delay, etc.

*Affirmed.*

## No. XXIX.

### MICHAEL DE YOUNG v. JOHN T. PATTERSON.

*Appeal from San Augustine.*

JACK, JUSTICE.—This case is submitted upon a motion to dismiss the appeal for the want of jurisdiction. Patterson sued De Young before a magistrate and obtained a judgment for about $75. De Young appealed to the District Court for San Augustine County. The appeal was dismissed from that court, and an appeal from that decision was taken to this court. The statute regulating appeals from justice courts prescribes that the decision of the case in the district court shall be

---

**Note 45.**—Allcorn, Administrator, etc., v. Sweeny, p. 494.

Court has no power to enter an involuntary nonsuit. Guest v. Guest, Dal., 394; Sandoval v. Rosser, 86 T., 682, 685. Appeal does not lie from judg-

final. We are of opinion that under this law no appeal lies from the district court upon causes brought before magistrates and appealed into the district courts. The motion must be sustained and the appeal dismissed.

*Dismissed.*

Judge Baylor says: "In this case I give no opinion."

## No. XXX.

### WHITING v. BRISCOE AND HARRIS.

#### (See Note 58.)

*Appeal from Harris County.*

OCHILTREE, JUSTICE.—Briscoe and Harris sued Whiting in the District Court of Harris County, in an action of debt, returnable to the fall term, 1839. Whiting pleaded in abatement that he was at the time of suing out the plaintiff's writ a citizen of Bastrop County and not a citizen of the county of Harrisburg, and prayed judgment of the court, that they would not take cognizance, etc. The plaintiffs took issue upon the plea and a jury were impaneled to try the issue. The jury returned the following verdict: "We, the jury, find that Samuel Whiting was a resident of the county of Harris on the 14th October, 1839"— which was the date of the writ or citation in this case. The defendant, Whiting, then pleaded the general issue and submitted the case to the jury, who found a verdict for the plaintiffs and a judgment was rendered accordingly. Whiting appealed.

There were several exceptions taken in the course of the trial below; but inasmuch as they were not of sufficient importance to attract the further attention of the distinguished counsel whose argument has been submitted to us in this case, we will confine our attention to the point which has been brought before us. It is contended by the counsel for the appellant that the finding of the jury did not answer the issue presented by the plea; that although Whiting may have resided in Harrisburg County on the 14th October, 1839, the date of the issuance of the original writ, that there was an alias writ, issued on the 21st April, 1840, upon which he was served and brought into court to answer at the time when he resided in another county; and inasmuch as the statute requires that in all cases not herein excepted the citizen should be sued in the county in which he resides, that it is the place of residence, at the time of the service of the writ, which determines the jurisdiction of the court over his person. This court is of a different opinion. The party instituting the suit ascertained the residence of Whiting, and

---

ment of nonsuit by a justice of the peace on ground that plaintiff failed to appear. Morgan v. Johnson, 4 T., 117.

commenced their suit in accordance with law. If Whiting afterwards, for the purpose of evading the jurisdiction, should have left the county in which the suit was instituted, it certainly could not be expected that the plaintiff should be reduced to the necessity of dismissing his suit, for the purpose of instituting another, when a like occurrence might happen. The residence of the party at the time of the institution of the suit determined the jurisdiction, and in this we unanimously concur. Let the judgment of the court below be in all things affirmed with damages, etc.

*Affirmed.*

## No. XXXI.

### WALKER AND WALKER V. McNEILS AND CALDER

*Appeal from Brazoria County.*

MORRIS, JUSTICE.—D. R. and E. B. Walker filed their petition, addressed to the equity side of the court, against L. H. and J. G. McNeil and R. M. Calder, alleging, that without consideration and by unlawful duress, they were coerced into the conveyance of certain lands and slaves to the defendants, as trustees for the use and benefit of Caroline E. Walker, wife of E. B. Walker, and her infant child E. B. Walker, and such other child or children as the said E. B. Walker and his wife Caroline B. Walker might have during their coverture, and praying that the said deed of conveyance should be delivered up to be canceled and forever declared null and void. The defendants admit the execution of the deed, but deny any knowledge on their part, at the time the deed was executed, that the plaintiffs were impelled thereto by fear of bodily injury, or by threats, violence, or duress of any kind. Upon the trial of the cause the judge directed two issues to be ascertained by the jury: 1. As to the duress. 2. Whether such blood relationship existed between the parties plaintiffs and Mrs. Walker and child as to support the trust.

The verdict returned by the jury upon these issues was, first, that there was no duress at the time of signing the deed; second, that the blood relationship between the Walkers and Mrs. Walker and child was sufficient to support the trust. Whereupon the petition of the plaintiffs was dismissed by the court and a judgment rendered against them for costs, from which judgment an appeal was taken to this court.

Before entering into the discussion of the material points involved

---

**Note 46.**—Wescott v. Menard & Co., p. 503.
   [1] Withdrawal of answer is a waiver of defects and confession of cause of action. Winfried v. Yates, Dal., 363; Cartwright v. Roff, 1 T., 78; Burton v. Lawrence, 4 T., 373; Prewitt v. Perry, 6 T., 260; Grier v. Powell, 14 T., 320; Story v. Nichols, 22 T., 87; Gilder v. McIntyre, 29 T., 89; Goodlett v. Stamps, 29 T., 121; Janson v. Bank, 48 T., 599; Etter v. Dignowitty, 77 T., 212; Graves v. Cameron, 77 T., 273; Wheeler v. Roberts, 2 App. C., sec. 129. Withdrawal of answer after demurrer is overruled does not amount to a confession. Frazier v. Todd, 4 T., 461; Janson v. Bank, 48 T., 599. The judg-

in this cause, it will be necessary to dispose of a preliminary question with regard to a mass of evidence which is embraced in the record, but objected to by counsel as not coming up in such manner and form as to entitle it to the consideration of this court. The testimony appearing in the record and objected to as being improperly contained therein, has appended to it an affidavit made in open court by one Peter McGreal, who states that he was appointed by the court below to take down the testimony in the investigation of the cause; that he believes it to be correctly taken down, and that it was read to the witnesses, who assented thereto. This affidavit is attested by the clerk. By reference to our statute law (volume 4, page 92) we find that where an appeal is taken from the district to the Supreme Court, the facts must be agreed upon by the adverse parties or their attorneys, or certified by the judge, before the rising of the court. It does not appear on the record of this cause that the testimony before alluded to has either been agreed upon by the parties, nor has it the certificate of the judge. It would be a loose and dangerous practice, even in the absence of our statute on the subject, to permit evidence to come before us which might materially affect the rights of parties litigant, upon the mere affidavit of any individual as to his appointment by the court to take down the testimony, and the correctness of that testimony, when it nowhere appears on the record that he was so appointed; but under the law there can be no doubt that we must decide from a consideration of the entire mass of evidence thus introduced.

As the determination of this court will be based on the exceptions taken by counsel below to the charge of the judge to the jury and his refusal to give other charges asked by the counsel, and the rejection of testimony offered by plaintiffs below, it is proper that the material portions of the judge's charge should be set forth, in order to determine whether such error in law exists as will entitle the plaintiffs to a reversal of the judgment. The court below refused to permit a witness to be asked whether or not he knew the plaintiffs to have been beaten, the day previous to the execution of the deed, until they *agreed to sign the same;* and also excluded testimony as to threats made by one Westall against the plaintiffs, to which opinions of the court the plaintiffs excepted. The judge then charged the jury, after some preliminary observations, as follows:

"The jury will reject *all* testimony, circumstantial, inferential, or otherwise, which does not relate to the substance, the time, and *manner* of signing and executing the deed; therefore a voluntary transfer of property for the benefit of the relations of the parties can not be affected

---

ment must conform strictly with the cause of action alleged in the pleadings. Storey v. Nichols, 22 T., 87; Janson v. Bank, 48 T., 599; Etter v. Dignowitty, 77 T., 212; Wheeler v. Roberts, 2 App. C., sec. 129. Judgment nihil dicit partakes of nature of judgment by default and by confession, and is construed liberally in plaintiff's favor. Cartwright v. Roff, 1 T., 78; Burton v. Lawrence, 4 T., 373; Wheeler v. Pope, 5 T., 262; Storey v. Nichols, 22 T., 87; Gilder v. McIntyre, 29 T., 89; Graves v. Cameron, 77 T., 273; **Wheeler v.** Roberts, 2 App. C., sec. 129.

by idle rumors or threats, which may have resulted from the supposed misconduct of the parties executing the trust; and which were not held up before them at the *moment* of acting, or whilst the necessary preparations were making to carry out the objects of the conveyance, with a view to compel their acquiescence from the terror of personal violence. If the plaintiffs, having been guilty of any misconduct which was calculated to call down upon them public resentment or indignation, voluntarily sought the method of a conveyance in trust for the benefit of the injured party, intending thereby to appease popular clamor, that act can not be set up in a court of justice to annul their own deed. The violence must be of such a threatening and instantaneous character as to make fear the moving, operating consideration to the deed. If the threats were made by those not present to execute them, it was easy for the persons threatened to apply to the civil authorities for protection; and it could not therefore be such a duress as would avoid the deed. It will be for the jury to determine from the facts of the case, whether these *impending circumstances* existed, taken in connection with the law. Duress is of two kinds—duress of imprisonment, where the person is confined; and duress of threats, where the act of violence is *declared,* or hanging over the party. Duress by threats is rather the fear of loss of life or limb. This fear must be well grounded; not mere conjecture or suspicion of danger, such as a timid mind might conjure up in a moment of alarm. The fear of losing one's property is no duress, because the injury may be repaired by damages; but no adequate atonement can be made for the loss of life, or limb, or liberty, or ignominious punishment." The charge asked by the plaintiffs' counsel, and refused by the judge, was, that when a party is subjected to undue influence of extreme terror or threats, or apprehensions short of duress, and executes a deed under such circumstances, it is void; also, that a deed made under circumstances of extreme necessity and distress of the party, although not accompanied by any direct restraint or duress, is void. Upon exception to the refusal to give this charge, the charge as given, and the rejection of the testimony offered, we are to determine whether the judgment should be affirmed or reversed. By referring to the charge of the judge, both in part and in whole, we find that the jury were required to confine their examination and base their determination upon facts which would prove duress at the *very time and place* of executing the deed; expressly charged to exclude all testimony, *inferential, circumstantial, or otherwise,* which did not relate to *the time, the manner, and the substance* of signing and executing the deed. This is stated in the very outset of the opinion of the judge. Immediately

---

[2] If the writ or citation is defective and the defect is discovered before defendant answers, a new writ may be awarded. If defendant answers, he waives objections to process. Raquet v. Nixon, Dal., 386; Kavanaugh v. Brown, 1 T., 481; Cartwright v. Chabert, 3 T., 261; Wood v. Smith, 11 T., 367; Yturri v. McLeod, 26 T., 84; Herndon v. Crawford, 41 T., 267; Armstrong v. Bean, 59 T., 492; Rice v. Peteet, 66 T., 568; Cahill v. Railway Co., 76 T., 100.

afterwards he states, "that no idle rumors of threats, which were not held up before the parties at the *moment of acting,* or whilst the necessary preparations were making to carry out the objects of the conveyance, with a view to compel their acquiescence, should be regarded by the jury." In fact, throughout the whole charge the same expressions, variously modified, but all tending to the same end as stated above, are repeated and enforced by the court. By an examination of the law guarding the decisions of courts on questions of this kind, we find that relief is afforded by the courts in a much more extensive class of cases than that embraced under the common law definition of duress, as given by the judge in his charge to the jury.

In 1 Story on Equity, page 243, the very words embraced in the charge asked by the plaintiffs' counsel and rejected in the court below are found; and the authorities there referred to fully sustain the doctrine. Nowhere do we find that the threats of violence, which are the inducement to a particular act, must be made at the very *time and place* of the execution of that act. The fear must exist at the time of the execution of a deed, but the threats and circumstances inducing that execution need not be present, but may be proved at any antecedent time; and it is for the jury to say, when those threats and circumstances are proven, whether they are sufficient to induce such fear as might move a man of ordinary firmness to the execution of the deed. But when we take in connection with the charge of the judge, confining and restricting the investigation of the jury, both by limited terms of the law and to a still more limited application of the facts, the refusal on the part of the court to admit the testimony shown to have been offered in the trial below, which testimony was at once legitimate and must, if answered in the affirmative, have had a direct and powerful influence on the minds of the jury, there can remain but little doubt that manifest injustice would be done by sustaining the judgment rendered below. The charge alone might not have been sufficient to reverse; but coupled with the rejection of testimony which was directly to the issue, a due regard for the rights of parties and for the laws, which must govern our decisions, requires a reversal of the judgment. From the meager statement of facts found in the record we can not proceed here to give such a judgment as should have been rendered in the court below. The cause will therefore be remanded for a new trial, and all the costs of the case will await the final decision of the cause.

*Remanded.*

---

[3] Errors not objected to in trial court can not be raised on appeal. Edwards v. Peoples, Dal., 359; Mann v. Thruston, Dal., 370; Bailey v. Hardy, Dal., 376; Darly v. Chevallier, Dal., 555; Hansborough v. Towns, 1 T., 58; Crosby v. Houston, 1 T., 203; Burton v. Anderson, 1 T., 93; O'Conner v. Towns, 1 T., 107; Jones v. Black, 1 T., 527; Cloud v. Smith, 1 T., 611; Swenson v. Walker, 3 T., 93, 110; Hopkins v. Donaho, 4 T., 336; Coles v. Perry, 7 T., 109; Davenport v. Lackie, 8 T., 351; Pierson v. Burney, 15 T., 272; Shelby v. Burtis, 18 T., 644; Bullock v. Hayter, 24 T., 9; Robinson v. Mattison, 25 T. Supp., 451; Elliot v. Mitchell, 28 T., 105; Allen v. Traylor, 31 T., 124; Andrews v. Jones, 36 T., 149; Hughes v. Roper, 42 T., 116; Carter v. Eames, 44 T., 544; Johnson v. Blunt, 48 T., 38; Ragsdale v. Robinson, 48 T., 379; Life Ins. Co. v.

## No. XXXII.

### DANIEL McKINNEY v. PETERS AND LEWIS.

#### (See Note 59.)

*Appeal from Bowie.*

OCHILTREE, JUSTICE.—Daniel McKinney filed his petition in the District Court of Bowie County, in which he alleges that on the 17th day of June, 1840, John S. Peters and Charles Lewis, the latter by the name and description of Chas. Lewis, for value received, acknowledged themselves indebted to your petitioner in the sum of $296.31, and in consideration thereof executed at the same time their promissory note, whereby they jointly promised to pay your petitioner said sum one day after date thereof aforesaid; yet though often requested, etc. We presume that the order of pleadings in the case is not correctly stated in the transcript sent up, as the record represents the defendant as pleading first the general issue and then demurring to the petition. The demurrer was overruled and a jury impaneled, when a note described as follows was attempted to be offered by the plaintiff in evidence.

"$296.31-100. One day after date, we promise to pay Daniel McKinney, guardian of the heirs of William Collum, deceased, two hundred ninety-six 31-100 dollars, value received of him this 17th June, 1840. (Signed) John S. Peters, Exr. of Samuel Peters, deceased. Charles Lewis."

Which note the court refused to permit to go to the jury, to which opinion of the court the plaintiff excepted. The verdict of the jury was for the defendant; judgment accordingly. Why the court below refused to let the note go to the jury we are not informed by anything contained in the statement of facts. From the arguments and briefs of counsel submitted, we are led to the conclusion that the court below are of opinion that there was a variance between the note described in the petition of the plaintiff and that offered as evidence. If it was because the petition did not set out the description of Peters, one of the payees, we are of opinion that he erred. There is no better settled doctrine than that an executor or administrator can not contract a debt to bind his intestate's estate. This being admitted, the fact that he thought proper to add, as an appendage to his name, executor of Samuel Peters, deceased, imposed no obligation on the plaintiff so to describe

Ray, 50 T., 511; Urquhart v. Womack, 53 T., 516; Brooke v. Clark, 57 T., 105; Caruth v. Grigsby, 57 T., 259; Farley v. Deslonde, 58 T., 588; Long v. Garnett, 59 T., 229; Langton v. Marshall, 59 T., 269; Flanagan v. Pearson, 61 T., 302; Gaines v. Nat. Exchange Bank, 64 T., 18; Ford v. Cowen, 64 T., 129; Blum v. Golden, 66 T., 621; Cannon v. Cannon, 66 T., 682; Tevis v. French, 71 T., 59; Ellis v. Garvey, 76 T., 371; Shornick v. Bennett, 77 T., 244; Brown v. Perez, 79 T., 157; Cason v. Conner, 83 T., 26; Hanrick v. Curley, 93 T., 458; Lytle v. Custead, 4 T. C. A., 490; Baker v. Collins, 4 T. C. A., 520; Spencer v. James, 10 T. C. A., 327; Eastham v. Sims, 11 T. C. A., 133; Prestage v. Loving, 1 App. C., sec. 707; Adams v. Duggan, 1 App. C., sec. 1268; Sears v. Green, 1 U. C., 734.

him in his petition. It might have been because the descriptio personae of the payee was omitted in the petition. We do not believe that it was necessary that the petitioner should have averred it, to enable him to offer a note which corresponded in all other material requisites with the indebtedness set forth. On a note made payable to an administrator, he may sue in his own name. Bayley on Bills, 335. So on a note payable to anyone in a fiduciary character, the payee need not sue in that character, but may maintain an action in his own name. We are of opinion, therefore, from all that we can glean from the record, that the court below erred in refusing to allow the note to be offered as evidence. It is therefore ordered, adjudged and decreed by the Supreme Court of the Republic of Texas, that the judgment of the court below be reversed, and that the plaintiff Daniel McKinney do recover of the defendants, John S. Peters and Charles Lewis, the sum of $296.31, principal, and $71 interest, together with all his cost in this behalf expended, together with 10 per cent damages for delay, and that execution issue therefor.

*Reversed and rendered.*

Concurred in by Chief Justice John Hemphill and Judge R. E. B. Baylor.

Judge P. C. Jack says: "I am compelled to dissent from the above opinion. I do not think the note offered in evidence was described in the petition. The judgment in this case, it seems to me, would be no bar to an action brought on the same note, by the plaintiff as guardian."

## No. XXXIII.

### John Durst v. Joseph F. Lewis.

*Appeal from Nacogdoches County.*

HEMPHILL, Chief Justice.—In this case the appellant, or plaintiff in error, was trustee for both parties to the record, and had no such interest in the matter in controversy as would authorize him to represent the rights of one in opposition to the claims of the other party. The parties are not properly before the court, and no case is presented for the exercise of appellate jurisdiction. Under such circumstances it would be superfluous to examine into the errors assigned by the plaintiff, as it would not be competent for this tribunal to afford relief against them, if any there might be. It is therefore ordered by the court here, that the writ of error be quashed and the case dismissed.

*Dismissed.*

---

**Note 47.**—Bradley v. McCrabb, p. 504.

[1] Person elected to fill a vacancy in an office is entitled to hold it for the statutory period, and not the unexpired term. Bradley v. McCrabb, Dal., 504; Roman v. Moody, Dal., 512; Shelby v. Johnson, Dal., 597; Banton v. Wilson, 4 T., 400. Distinguished in Royston v. Griffin, 42 T., 566.

## No. XXXIV.

### SAMUEL SHARPE v. THE REPUBLIC OF TEXAS.

*Appeal from Jackson County.*

OCHILTREE, JUSTICE.—Samuel Sharpe, having proved before the board of land commissioners of Jackson County that he was a resident citizen at the date of the declaration of independence, a single man, and had actually engaged in the service of his country pending the revolution, having been present at the taking of San Antonio and at the battle of San Jacinto, was allowed a certificate for one-third of a league of land. Subsequently and within the time prescribed by law he married, and thereby became entitled to an augmentation of two-thirds of a league and one labor of land. The woman whom he had married had arrived in this Republic after the 1st day of January, 1837, and was the head of a family; and in her own right, anterior to her marriage with Sharpe, received a certificate under the twenty-fourth section of the land law for 1280 acres of land. When Sharpe after his marriage applied to the board for his augmentation, they insisted on deducting from the two-thirds of a league and labor to which he was entitled, the quantity of land for which his wife had, previously to marriage, received her certificate. From this decision the plaintiff appealed to the district court, where, strange to say, the judgment of the commissioners was not only reversed, but Sharpe was decreed to recover nothing by his suit. From this judgment the plaintiff took an appeal to this court. In this state of case, it becomes our duty to render such judgment as should have been rendered by the court below. The board of commissioners should have issued the plaintiff a certificate for the full quantum of land authorized by the twenty-third section of the land law, passed December 14, 1837, viz., two-thirds of a league and one labor. That section contains the only exceptions to the rule, viz: that its provisions should apply to those only who have contributed to the support and defense of the country; that the additional quantity shall not be allowed to any whose wife has received a league of land from the government. Neither exception applies in this case. The judgment of the court below must be set aside. It is therefore ordered, adjudged and decreed, that the plaintiff, Samuel Sharpe, recover of the Republic of Texas an augmentation of two-thirds of a league and one labor of land, and that the judgment of this court be certified to the District Court of Jackson County, and that the clerk of

---

[2] Quo warranto is a legal proceeding by the State to determine the right of an office or franchise, and to oust or forfeit. As a general rule, it can only be sued out in the name of the State by its prosecuting officer. It is also used to ascertain whether an individual has authority to exercise official functions. Ex parte Colin De Bland, Dal., 406; Bradley v. McCrabb, Dal., 504; Wright v. Allen, 2 T., 158; State v. S. P. Ry. Co., 24 T., 80; Grant v. Chambers, 34 T., 573; Brennan v. Weatherford, 53 T., 330; State v. De Gress, 53 T., 387; Farmer v. State, 69 T., 561; Wallace v. Anderson, 5 Wheat., 291;

said district court be ordered and directed to issue to said Samuel Sharpe a certificate, in due form of law, for said amount of land.

*Reversed and rendered.*

## No. XXXV.

### SCOTT AND SOLOMON v. MAYNARD ET UX.

(See Note 60.)

*Appeal from Matagorda County.*

HEMPHILL, CHIEF JUSTICE.—Maynard and wife brought this action in the court below against Scott and Solomon, to try the title to a certain lot of land in the town of Matagorda. The answer of the defendants denies the allegations of plaintiffs, and asserts title to themselves to the lot in question; filing interrogatories to be answered by the said Maynard, in relation to the consideration paid by him for certain improvements on the said lot. A conveyance of the said improvements by Scott and Solomon to Maynard is filed as an exhibit in the case; and Maynard's answers to the interrogatories are, that the consideration consisted of cash advanced, goods sold, work done and liabilities assumed; and that it has not failed. Upon an affidavit of Scott and Solomon, a change of venue was granted, by the judge in chambers, to the county of Brazoria; but the cause was never transferred. Trial being had, judgment was rendered for plaintiffs, and a writ of possession to the lot in controversy awarded. A motion for a new trial was made on the following grounds, viz: that the court instructed the jury that the only question for their inquiry was as to the title to the lot, and that they were not to inquire into the value of the improvements, and that no survey of the property was ordered by the court; no demand of possession proven by the plaintiffs; and no notice to quit given to defendants. The motion was overruled, and an appeal taken. During the progress of the cause there were three several agreements of the counsel•of both parties in relation to the title of the wife of the said Maynard to the land in dispute; by the final modification of which it was admitted that she had become the owner thereof by purchase, after her marriage with the said William J. Maynard. The petition and answers in a suit in equity, instituted by Scott and Solomon against Maynard and wife, were offered in evidence. In his answer, the said William J. Maynard admits that some time in October, 1839, he offered verbally to sell to the said Scott and Solomon the said lot for the price of $600 in cash; that they, having accepted the proposition, took possession of the same, promising from day to day the payment of the said money in

Territory v. Lockwood, 3 Wall., 236. An individual may make the relation on which the State's officer files the information. In such cases the proceedings are in the exclusive control of the State's officer, and can not be dismissed by the relator. Banton v. Wilson, 4 T., 400; Mathews v. State, 82 T., 577; McClesky v. State, 4 T. C. A., 322. If relator has no interest, court

pursuance of their agreement, but had hitherto failed to do so.    He
admits that the said Scott and Solomon had erected a building on the
said lot, but states that they had disposed of the same for a valuable
consideration, and that his wife, C. O. Maynard, is now sole owner and
proprietor thereof.   From some exhibits in the case it appears that this
house was conveyed by Scott and Solomon to the said William J. May-
nard and by him to one Thomas Stewart, and from the said Thomas
Stewart to the wife of the said Maynard.   A. C. Horton testifies, that
Maynard admitted to him that he had sold the lot of ground to the ap-
pellants for $600, to be paid in sixty days.   Maynard also stated that
Scott and Solomon had made him a deed for the improvements, to secure
him as their indorser.   The value of the improvements he would estimate
at four or five thousand dollars, at the time they were made.   John W.
McCamly testified that Maynard made similar admissions to him as
to the sale of the lot, and that he had received the money.   Witness
thought that he had received property sufficient to satisfy him.

This cause was heard at the previous session of the Supreme Court.
The arguments of counsel were then principally directed to the grounds
urged in the motion for a new trial.   To these points we will now first
advert.   The statute under which this action was brought was passed to
prevent the complicated and fictitious proceedings of the action of eject-
ment, as known to the law, simplifying its form and modifying in some
degree its action and effects.   In the eighth section of that act it is pro-
vided, that on a suggestion of a defendant in possession of lands that he
and those persons under whom he claims have had adverse possession
of the land in controversy for at least one year previous to the com-
mencement of the suit, etc., that the jury shall inquire into the truth of
the suggestion, ascertain the value of the improvements, if any have
been made, and give such judgment either for or against the defendant
as the comparative value of the improvements and the damages sus-
tained by the detention, use and occupation may require at their hands.
The third section provides, that a survey shall be ordered by the judge
of the land, in chambers or in court, or upon motion of either party,
for the better finding out and discovering the truth of the matter in
controversy.   There was no error in the court below in overruling the
points here made.   As to the first, no suggestion as required by law was
filed; and though the value of the improvements was proven, still no
inquiry could be made by the jury, since there was no allegation in the
answer under which the proof could be introduced, and any evidence
therefore on that point was extrinsic to the issue.   The provision with

may refuse to allow the information to be filed, or dismiss it.    Deaver v.
State, 27 T. C. A., 453.   Can not be used as a remedy by a stockholder of a
corporation.   State v. R. G. Ry. Co., 41 T., 217.   Quo warranto is a proper
proceeding to try title to an office, but it has always been regarded by our
courts as only a cumulative remedy.   Bradley v. McCrabb, Dal., 504; Wright
v. Allen, 2 T., 158; State v. Cocke, 54 T., 482; Flatan v. State, 56 T., 93; Watts
v. State, 61 T., 184; State v. Jennett, 63 T., 261; McAllen v. Rhodes, 65 T., 348;
Fowler v. State, 68 T., 30; Williams v. State, 69 T., 368; Livingston v. State,
70 T., 393; State v. De Gress, 72 T., 242; Hunnicutt v. State, 75 T., 233.   The
term "franchise" used in Act of July 9, 1879 (Gammel's Laws of Texas, vol.

regard to the survey is merely directory where there is doubt, though a matter of right when required on motion; and since no motion was made for the survey, and no difficulty arose as to the proper designation and identification of the land, the petition and answer concur in their descriptions of the lot in dispute. There being, then, no necessity for the survey, there was no error in proceeding to trial without an order for the same. Equally unsound are the other reasons alleged in the motion. Demand of possession and notice to quit are necessary when the parties occupy the relative position of landlord and tenant. But the defendants claim the lot in controversy as their absolute property. The important questions which still present themselves, from an inspection of the record, are in relation to the interest or estate which the wife has to the land in contest; the husband's power of disposing or selling of the same; and whether the sale, being made verbally, was valid and binding in law.

The alleged sale of the lot in question from Maynard to Scott and Solomon, having been made in 1839, before the introduction of the common law, the rights of the parties are regulated and must be determined by the system of laws prevailing in this Republic at the period of the transaction. As tested, then, by these laws, did the purchase by Mrs. Maynard of this property after her marriage vest in her any estate or interest separate and apart from that of her husband; or did it immediately become a portion of the community of "acquits," or gains? By reference to White's Recopilacion, we find that ganancial property is all that which is increased or multiplied during marriage; by multiplied, being understood all that which is increased by onerous cause, or title; and not by a heratine one, as inheritance or donation; that property is supposed to be common, except when proved to be separate or distinct; that what the husband or wife bring into marriage as their own peculiar property, or acquire during it by lucrative cause or title, does not come into partition; but that property acquired during marriage by purchase, sale, or other onerous cause or title, does. 1 White's Recopilacion, p. 61. Having no access to the works of Febrero, we are compelled to glean such extracts from that author, applicable to this subject, as may be found on examining the Reports of Louisiana. In Davenat v. Le Bocton, 1 La., 520, it was decided that by the Spanish laws everything purchased during the marriage fell into the common stock of gains, and at the death of either of the parties was to be divided equally between the survivor and the heirs of the deceased; and this

9, p. 75), Rev. Stats. 1895, art. 4347, regulating quo warranto proceedings, applies only to franchises of corporations. State v. Smith, 55 T., 447; I. & G. N. Ry. Co. v. State, 75 T., 356. County and district attorneys can not institute quo warranto proceedings to forfeit charter of corporation. Rev. Stats. 1895, art. 4343, in so far as it attempts to confer such power, is unconstitutional. Such proceedings must be brought by the Attorney-General. Constitution, art. 4, sec. 22; State v. Paris Ry. Co., 55 T., 76; State v. Moore, 57 T., 307; State v. I. & G. N. Ry. Co., 89 T., 562; also see State v. S. P. Ry. Co., 24 T., 80; State v. R. G. Ry. Co., 41 T., 217. A contrary rule seems to be held in Morris v. State, 62 T., 728, but is distinguishable from the other cases, in that the suit was to oust from use of a franchise not authorized by

effect was produced whether the purchases were made with the money or capital of the community, or with that of either of the married parties; whether in the name of both, or that of one of them separately. See Feb. add. part 2, lib. chap. 4, sec. 1, No. 6. In the Novissima Recopilacion (lib. 10, title 4, sec. 1), we find a law expressed in the following terms: "'Toda cosa que el marido y muger ganaren a compraon estando de consuno hay aulo ambos por medio," etc. [Everything which the husband or wife shall acquire or purchase while together shall be equally divided between them, etc.] From an examination of the above authorities, we are justified in concluding that under the Spanish laws property acquired during marriage by purchase, whether the acquisition be made in the joint names of husband and wife or of either of them separately, must be considered as common property, and that if there be any exception to this general rule, it must be established by certain and positive evidence, or otherwise the presumption that the property is common will remain in all its force unimpaired. It appearing, then, by the testimony that Mrs. Maynard acquired the lot in dispute by purchase after marriage, the same was thrown into the common stock of gains, and by operation of law was impressed with all the incidents appertaining to ganancial property.

We proceed to consider the husband's power of disposing or selling the same. In Sala, lib. 1, title 4, sec. 20, it is clearly laid down that, during the continuance of the marriage the *actual* dominion over the community property is vested in the husband, and that therefore he can sell the common property without the consent of the wife; and that such disposition is valid, except when made for the purpose of defrauding or prejudicing the wife. See also, 1 White's Recop., p. 63, with the notes from Palacios. Maynard, then, having the administration of the ganancial property, and the power of disposing thereof without the consent of his wife, his alienations of the same, when not vitiated by the exception above mentioned, would be valid and binding in law. The question next in order is as to the validity of a verbal sale under the laws of Spain. In the 5th Partida, title 5, Law 6, it is said that sale and purchase may be affected in two ways, etc. "One of the modes is without writing; when the seller and buyer have mutually agreed upon the price; the one being pleased with the price and the other the thing, without mentioning any writing. We say that a sale thus made would be perfect, although no earnest had been given by the buyer to the seller; as they would be both bound for the fulfillment of the contract they had made." In Gonzales v. Sanches and Wife, 10 N. S., 67, and in Ducrest's Heirs v. Bijeau's Estate, it was decided that, by the Spanish

law—may be filed by district attorney pro tem. Fowler v. State, 68 T., 30; Davis v. State, 75 T., 420; Little v. State, 75 T., 616; Bell v. Faulkner, 84 T., 187, 189; Dean v. State, 88 T., 290; State v. Thompson, 10 T. C. A., 272; Hanscom v. State, 10 T. C. A., 638; Hussey v. Heim, 17 T. C. A., 153; Gray v. State, 19 T. C. A., 521; Quintanilla v. State, 23 T. C. A., 479. Though the State may appeal without bond, the costs should be taxed against the relator, not the State. Hussey v. Heim, 17 T. C. A., 153; State v. Broach (T. C. A.), U. R. C., 1896. It does not lie when there is no question as to the right to the

laws, parol evidence was admissible to establish the alienation or acqui-
sition of immovable property; and in Sackett v. Hooper, 3 La., 104,
the same doctrine was expressed in substance, though in the latter case,
possession on the part of the vendee was maintained as a necessary in-
cident to the validity of the sale.  From an examination of the above
law and authorities, we are of opinion that a verbal sale of lands, accom-
panied by possession on the part of the vendee, was valid under the laws
in force at the time of making the contract (in this Republic).  From
the record, we think there was sufficient evidence that a verbal sale was
made by the said Maynard to the appellants.  His answer to the suit
in equity partially admits the fact, and also of possession taken by the
vendees.  Two witnesses testify to his admissions of having sold the lot
for $600; one of them says, to be paid in sixty days; and the other, that
Maynard admitted the receipt of the money.  The fact of the sale (which
was valid in law) being thus established by evidence, the finding of the
jury in favor of the plaintiffs in the court below was clearly erroneous.
Before awarding final judgment, the court will take occasion to express
its sense of the important assistance afforded them by the able and zealous
efforts of the gentlemen of the bar, when their investigations are directed
to the system of laws by which the matters in controversy must be de-
cided.  But when their arguments are based on some other system, which,
however admirable for its justice or exalted for its wisdom, can exer-
cise no other authority than that derived from the force of reason, their
labors serve to perplex and confound, rather than remove the embarrass-
ments which shroud the important principles involved in the contro-
versy.  The court appreciate the difficulty arising from the scarcity
of books or authorities on questions arising under the former laws of
the country.  But it is clearly the duty of the attorneys to exhaust all
which may be accessible to them before they turn for assistance to the
common or any other system of law.  Throughout the progress of this
cause in the court below, as well as before this tribunal, there has been
a strange compound of error, and a mixture of the different systems of
jurisprudence, springing originally from the belief that the lot sold
was the separate property of the wife.  The errors which appear in the
charge of the court below originate from this mistake; and from the
conduct of the argument in this court, it is manifest that the principles
of law which governed the case were not discussed before the district
court; and from this circumstance the judge was misled to charge on
principles of law which were not applicable to the case.  Having ma-
turely considered the matters presented on the record for our decision,

office, to question right of officer to do an act or restrain him from exercising
a privilege incident to his office.  State v. Smith, 55 T., 447.  Nor to oust an
officer for bribery until conviction.  State v. Humphries, 74 T., 466.  Nor to
revise decision of city council as to eligibility of candidate for municipal
office.  Seay v. Hunt, 55 T., 545; Krakauer v. Kaples, 5 T. C. A., 264.  Nor
by public weigher against a private weigher.  Watts v. State, 61 T., 184.
It does not lie to forfeit fronchise, except for causes declared by statute.
State v. R. G. Ry. Co., 41 T., 217; Morris & Cummings v. State, 65 T., 53.
It lies against the enjoyment of a franchise granted either by State or muni-
cipal legislation, when the power to grant did not exist; and the legality of

